1  Joseph Martin McGhee
   P.O. Box 91
2  Flagstaff, AZ 86002
   Tel: (928) 600-0954
3  mcghee.v.city.of.flagstaff.et.al@gmail.com

4  Plaintiff, *in Pro Per*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| Joseph Martin McGhee, | No. 3:20-cv-08081-GMS |
|---|---|
| Plaintiff, | **VERIFIED THIRD AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| vs. | |
| The City of Flagstaff; Coral Evans, Sued in her Official Capacity as Mayor of the City of Flagstaff; Doug Ducey, Sued in his Official Capacity as Governor of the State of Arizona, | Assigned to the Hon. G. Murray Snow |
| Defendants. | |

Plaintiff, Joseph Martin McGhee, and on behalf of all others similarly injured within the state of Arizona, brings this Verified Complaint under 42 U.S. Code Section § 1983 ("§ 1983") for declaratory and injunctive relief under Arizona law, against: (1) the City of Flagstaff; (2) Coral Evans, in her official capacity as mayor of the City of Flagstaff; and (3) Doug Ducey, in his official capacity as governor of the State of Arizona; for violations of rights under the Fifth and Fourteenth Amendments to the United States Constitution as set forth in Plaintiff's Memorandum of Law, which is attached to this Complaint and is hereby incorporated by reference.

## I. INTRODUCTION

*"Ignorance is the parent of fear." — Herman Melville*

**A.    COVID-19 Is A Pandemic**

There can be no doubt that COVID-19 has spread around the world and to include

Flagstaff – it has become a pandemic. There can likewise be no doubt that there is intense widespread fear, arguably bordering on mass panic and hysteria, over this spread.

The word "pandemic" is inherently frightening – conjuring images of millions dead around the world, as in the 1918 Spanish Flu Pandemic. Nevertheless, the word only means: occurring over a wide geographic area and affecting an exceptionally high proportion of the population.[1] "Pandemic" does not in fact refer to any particular designation of potential for harm or lethality inherent to this distribution geographic distribution – it is merely a description of *prevalence.*

**B.     There Is Another Ongoing Pandemic Of A Dangerous Infectious Disease**

Fear is a natural reaction when confronted with a *perceived* threat to one's life. Being repeatedly warned that there is a rapidly-spreading and highly-lethal virus which is uncontrolled and unconstrained is scary. When these warnings are accompanied by the assertion that 3.4% of everyone – man, woman, and child – who contracts this virus will *die*, infection with COVID-19 becomes an absolute <u>terrifying</u> prospect. (Exhibit 1)

If this 3.4% mortality rate is accurate then when all is said and done and COVID-19 has come and gone from Flagstaff, at least one Macy's employee, at least seven workers at Fry's, at least 75 employees at Flagstaff Medical Center, at least 500 of Flagstaff's children, at least 1074 Northern Arizona University students and staff, and at least 12,000 members of the Navajo Nation, will have died from COVID-19 infection. This is indeed a horrific prospect and certainly one that, if true, the entire community should prepare for and attempt to mitigate through any and all reasonable and necessary means.

But this 3.4% statistic (and others like it) is simply not accurate – not even remotely. Moreover, even if this statistic were statistically accurate, it is *highly-misleading* in that it groups all COVID-19 deaths together into one collective "mortality

---

[1]     "Pandemic" Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/extreme, Accessed April 23, 2020.

rate." Worse yet, it lacks any contextual value as to the risk-factors which are relevant in calculating this mortality rate, let alone where such figure has been scientifically-validated.

This misuse of a mortality statistic is analogous to conflating rates of drunk-driving fatalities with fatalities from non drunk-driving accidents because they both occur with automobiles. Obviously drunk-driving presents an overall risk of automobile accident fatality which is orders of magnitude greater than that non drunk-driving. It would be patently disingenuous to conflate these two independent variables of traffic fatality risk.

Analysis devoid of any meaningful foundation, point of reference, or context, is methodologically unsound – the statistician's way of stating that it's useless and lacks any descriptive value. Any data from such an analysis is essentially worthless – "garbage in, garbage out" as the statistical euphemism goes.

**C.    COVID-19: Unscientific Data – 6.9% Mortality Rate**

As of April 23, 2020, the World Health Organization, ("WHO"), reports 2.54 million "laboratory confirmed" Covid-19 cases with 175,694 deaths – a 6.9% mortality rate. The U.S. Centers for Disease Control, ("CDC"), reports 828,441 total cases with 46,379 deaths – a 5.6% mortality rate.

**1.    WHO Covid-19 Infection And Mortality Reports Are <u>Not Credible</u>**

Because the WHO, (Exhibit 2), and CDC, (Exhibit 3), use essentially identical criteria to diagnose and "confirm" Covid-19 infections and deaths, only the WHO criteria will therefore be subject to analysis.

**a.    WHO Definition: "Covid-19 Death"**

"COVID-19 death is defined for surveillance purposes as a death resulting from a clinically compatible illness in a probable or confirmed COVID-19 case, unless there is a clear alternative cause of death that cannot be related to COVID disease (e.g. trauma).

There should be no period of complete recovery between the illness and death." (Exhibit 2, pg. 12)

      **b.**  **WHO Definition: "Probable Case" (Covid-19)**

"A suspect case for whom testing for the COVID-19 virus is inconclusive … Inconclusive being the result of the test reported by the laboratory; <u>OR</u> A suspect case for whom testing could not be performed for any reason ." (Exhibit 2, pg. 12)

      **c.**  **WHO Definition: "Suspect Case" (Covid-19)**

"A patient with acute respiratory illness (fever and at least one sign/symptom of respiratory disease, e.g., cough, shortness of breath); <u>AND</u> a history of travel to or residence in a location reporting community transmission[2] of COVID-19 disease during the 14 days prior to symptom onset … <u>OR</u> [a] patient with any acute respiratory illness AND having been in contact with a confirmed or probable COVID-19 case (see definition of contact) in the last 14 days prior to symptom onset … <u>OR</u> [a] patient with severe acute respiratory illness (fever and at least one sign/symptom of respiratory disease, e.g., cough, shortness of breath; <u>AND</u> requiring hospitalization) <u>AND</u> in the absence of an alternative diagnosis that fully explains the clinical presentation. " (Exhibit 2, pg. 11)

      **d.**  **WHO Definition: "Contact" (Covid-19)**

"A contact is a person who experienced any one of the following exposures during the 2 days before and the 14 days after the onset of symptoms of a probable or confirmed case: Face-to-face contact with a probable or confirmed case within 1 meter and for more than 15 minutes; Direct physical contact with a probable or confirmed case; Direct care for a patient with probable or confirmed COVID-19 disease without using proper personal protective equipment … <u>OR</u> [o]ther situations as indicated by local risk assessments. " (Exhibit 2, pg. 12)

---

[2] Community transmission has been reported in all 50 states.

### 2. Cases The WHO Would Classify As "Confirmed" Covid-19 Deaths

A 60 year-old man with a history of sleep apnea, who has a fever and cough and who lives anywhere in the United States (a "suspect case") for whom Covid-19 testing could not be performed because there were no tests available (becomes a "probable case") and who dies in his sleep (becomes a "confirmed case").

A 53 year-old woman, with a fever and runny nose who sleeps in the same bed as her 56 year-old husband who also has a fever and runny nose (a "suspect case) for whom a Covid-19 lab test was inconclusive (becomes a "probable case") who dies of cardiac arrest (becomes a "confirmed case").

A 29 year-old man with a history of severe asthma, who is admitted to the hospital after an asthma attack and is found to have a fever and nasal congestion (a "suspect case") for whom Covid-19 testing could not be performed because there were no tests available (becomes a "probable case") who later dies and where a cause of death could not be clearly identified (becomes a "confirmed case").

### D. COVID-19: Scientific Data – 0.12-1.6% <u>Overall</u> Mortality Rate

#### 1. Study: British Medical Journal – 1.6% Mortality

A study conducted by researchers from the University of Bern in Switzerland and published on March 3, 2020, found that mortality rates from Covid-19 infection were highly age-specific: (1) In persons aged 0-9 years the mortality rate is 0.0094%; (2) in persons aged 10-19 years the mortality rate is 0.022%; (3)in persons aged 20-29 years the mortality rate is 0.091%; (4) in persons aged 30-39 years the mortality rate is 0.18%; (5) in persons aged 40-49 years the mortality rate is 0.4%; (6) in persons aged 50-59 years the mortality rate is 1.3% (7) in persons aged 60-69 years the mortality rate is <u>4.6%;</u> (8) in persons aged 70-79 years the mortality rate is **<u>9.8%</u>**; (9*)* in persons aged 80+ years the mortality rate is **<u>18%</u>**.Taking the average mortality rate of infected individuals across all of age groups gives <u>an overall mortality rate of 1.6%</u>. (Exhibit 4)

### 2. Study: University of Southern California – 0.14-0.27% Mortality

In a study conducted by the University Of Southern California and the Los Angeles County Department of Public Health, based upon verified laboratory testing it was estimated that 221,000 to 442,000 adults in Los Angeles County have been infected with Covid-19, and with 600 deaths. This estimate is 28 to 55 times higher than the 7,994 confirmed cases (with approximately 600 deaths) reported to the county. This represents <u>an overall mortality rate from Covid-19 infection of 0.14-0.27%.</u> (Exhibit 5)

### 3. Study: Stanford University – 0.12-0.2% Mortality

In a study conducted by researchers from the Stanford University Medical School and published April 11, 2020 as a research letter in the peer-reviewed Journal of the American Medical Association publication, 3,330 persons were tested for evidence of Covid-19 infection. Based upon these tests, the researchers concluded that between 48,000 and 81,000 people in Santa Clara County had been infected. This figure is 50 to 85-times higher than the number of confirmed cases for the county and represents <u>an overall mortality rate from Covid-19 infection of 0.12-0.2%.</u> (Exhibit 6, pg. 7)

## E. COVID-19: Scientific Data – Mortality Risk Factors

### 1. Age

In a study published in the peer-reviewed Journal of the American Medical Association, the researchers reported that persons over 65 years of age were 617% more likely to die of Covid-19 infection than those under age 65. (Exhibit 7)

Data from the Arizona Department of Health Services "Covid-19 Dashboard" on April 22, 2020, reported a total of 5,459 cases with 229 deaths – a 4.2% mortality rate. 73% of these deaths occurred in persons ages 65-years and up and 89% of all Covid-19 deaths in Arizona occurred in persons ages 55+ years. Persons aged 20-44 years comprised 37% of all Covid-19 cases but just 3% of Covid-19 fatalities. Out of 214

infections in persons ages 0-19, there were no fatalities. (Exhibits 8, 9). Cases in Arizona are diagnosed according to CDC guidelines for diagnosis.[3]

Even based upon the specious WHO and CDC "diagnostic" criteria for Covid-19 infections, these raw infection mortality numbers clearly demonstrate that persons under 55-years have very little risk of a fatal outcome due to Covid-19 infection.

### 2. Hypertension

In a pooled study conducted by a international team of researchers from both the United States and Italy, published March 31, 2020 in the peer-reviewed Polish Archives of Internal medicine, the researchers reported that the risk of mortality from Covid-19 infection is nearly 242% higher in persons with hypertension than those without. (Exhibit 10)

### 3. Other Serious Chronic Health Conditions

In a study published March 6, 2020, in the New England Journal of Medicine, persons infected with Covid-19 who had: chronic obstructive pulmonary disease (COPD) were 5.8-times more likely; diabetes 2.8-times more likely, hypertension 1.8-times more likely, heart disease 3.2-times more likely, and kidney disease 3.4-times more likely, to experience a severe infection vs. those without these conditions. <u>Astonishingly, these patients with serious chronic health were **81-times more likely to die** than infected patients without these conditions.</u> (Exhibit 11)

## II. PARTIES

1. Plaintiff Joseph Martin McGhee ("Plaintiff McGhee"), P.O. Box 91, Flagstaff, Arizona, 86002, is a citizen of the United States and an Arizona resident who has been harmed by the unlawful and unconstitutional actions of Defendants.

---

[3] Arizona Covid Clinician Fact Sheet, Arizona Department of Health Services, https://azdhs.gov/documents/preparedness/epidemiology-disease-control/infectious-diseases-services/coronavirus/clinician-fact-sheet.pdf, Accessed April 30, 2020

2. Defendant the City of Flagstaff ("the City of Flagstaff") is a community incorporated pursuant to A.R.S. §9-101 having a principal place of business at 211 West Aspen Street, Flagstaff, Arizona, 86001.

3. Defendant Coral Evans ("Mayor Evans") is the elected mayor of the City of Flagstaff, having a principal place of business at 211 West Aspen Street, Flagstaff, Arizona, 86001.

4. Defendant Doug Ducey ("Governor Ducey") is the elected governor of the State of Arizona, having a principal place of business at 1700 West Washington, Phoenix, Arizona, 85007.

### III. JURISDICTION AND VENUE

5. This Complaint was timely and properly removed on April 9, 2020, pursuant to 28 U.S. Code § 1441.

### IV. FACTUAL BACKGROUND

6. On March 11, 2020, Governor Ducey issued a "Declaration Of Emergency COVID-19." (Exhibit 12)

7. On March 15, 2020, Mayor Evans issued a Declaration of Local Emergency, (Exhibit 13), and a "Proclamation Under Declaration Of Local Emergency Dated March 15", ("Proc-1"). (Exhibit 14)

8. On March 19, 2020, Governor Ducey issued Executive Order #2020-09, ("EO-9") "Limiting The Operations Of Certain Businesses To Slow The Spread Of COVID-19." (Exhibit 15)

9. On March 26, 2020, Mayor Evans issued a "Second Proclamation Of The Mayor Under Declaration Of Emergency Dated March 15", ("Proc-2"). (Exhibit 16)

10. On March 30, 2020, Governor Ducey issued Executive Order #2020-18, "Stay Home, Stay Healthy, Stay Connected." (Exhibit 17)

1. 11. On April 29, 2020, Governor Ducey issued Executive Order 2020-33, ("EO-33"), Returning Stronger – Amending the Stay Home, Stay Healthy, Stay Connected Order." (Exhibit 18)

## V. BASIS FOR ENTITLEMENT TO RELIEF

12. As set forth in Plaintiff's Memorandum of Law filed with this Complaint, which Plaintiff hereby incorporates by reference as part of this Complaint, Defendants' Covid-19 emergency declarations, their actions in issuing Orders based upon these emergency declarations, and their enforcement of these Orders, have substantially and unlawfully deprived Plaintiff of his Fifth and Fourteenth Amendment rights under the Constitution of the United States, as follows:

    a. EO-9 is a constructive seizure of private property without procedural due process in violation of the Fifth Amendment to the United States Constitution and violates the rights of Plaintiff and certain other Arizonans, under color of law.

    b. EO-9 violates the substantive due process requirements of the Fourteenth Amendment to the United States Constitution by infringing on Plaintiff and certain other Arizonans right to work of, under color of law.

    c. EO-18 and EO-33 violate(d) the procedural due process requirements of the Fifth Amendment to the United States Constitution by infringing on the constitutional right to free movement and travel and (have) violate(d) the rights of Plaintiff and all Arizonans, under color of law.

    d. EO-18 and EO-33 violate(d) the substantive due process requirements of the Fourteenth Amendment to the United States Constitution and (have) violate(d) the rights of Plaintiff and all Arizonans, under color of law.

e. Proc-1 and Proc-2 is/are (a) constructive seizure(s) of private property without procedural due process in violation of the Fifth Amendment to the United States Constitution and (have) violate(d) the rights of Plaintiff and certain other Arizonans under color of law.

f. Proc-1 and Proc-2 is/are (a) constructive seizure(s) of private property without just compensation in violation of the Fifth Amendment to the United States Constitution and violates the rights of Plaintiff and certain other Arizonans under color of law.

13. Plaintiff asserts standing to bring these claims for relief on behalf of all others within the state of Arizona similarly injured by the acts of Defendants. [4]

## VI. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, and award the following relief:

A. Declare that Executive Order #2020-18 violated the Fifth and Fourteenth Amendments of the United States Constitution, both on its face and as applied to Plaintiff and all Arizonans.

B. Declare that Executive Order #2020-18 was a *per se* mass quarantine order unsupported by, and issued in violation of, Arizona law.

C. Declare that Executive Order #2020-33 violates the Fifth and Fourteenth Amendments of the United States Constitution, both on its face and as applied to Plaintiff and all Arizonans.

D. Declare that Executive Order #2020-33 is a *per se* mass quarantine order unsupported by, and issued in violation of, Arizona law.

---

4 See *Barrows v. Jackson*, 346 U.S. 249 (1953)(holding that a white defendant who was being sued for damages for breach of a restrictive covenant directed against African Americans—and therefore able to show injury in liability for damages—was held to have standing to assert the rights of the class of persons whose constitutional rights were infringed) See also *Buchanan v. Warley*, 245 U.S. 60 (1917)

E. Declare that Executive Order #2020-09, violates the Fifth and Fourteenth Amendments to the United States Constitution, both on its face and as applied to Plaintiff and certain other Arizonans.

F. Declare that Mayor Evans' Proclamation Under Declaration Of Local Emergency violated the Fifth and Fourteenth Amendments to the United States Constitution, both facially and as applied to Plaintiff and certain other Arizonans.

G. Declare that Mayor Evans' Second Proclamation Under Declaration Of Local Emergency, violates the Fifth and Fourteenth Amendments to the United States Constitution, both facially and as applied to Plaintiff and certain other Arizonans.

H. Declare that within the state of Arizona any quarantine order or any order which is substantially the same as a quarantine order, to include Executive Orders issued by the governor, must be issued pursuant to, and in compliance with, A.R.S. §§ 36-787, 36-788, and 36-789.

I. Preliminarily and permanently enjoin enforcement of Executive Order #2020-09.

J. Preliminarily and permanently enjoin enforcement of Executive Order #2020-33.

K. Preliminarily and permanently enjoin enforcement of Mayor Evans' "Second Proclamation Under Declaration Of Local Emergency Dated March 15."

L. Preliminarily enjoin Governor Ducey from issuing any future Executive Order which is substantively the same as Executive Order #2020-33.

M. Preliminarily enjoin Governor Ducey from issuing any future Executive Order which is a quarantine or a *per se* quarantine, excepting under the conditions as set forth under A.R.S. §§ 36-787, 36-788, and 36-789.

N. Awarding Plaintiffs all reasonable costs, including attorneys' fees, incurred in bringing this litigation.

O. A declaration of the rights, responsibilities, liabilities, and obligations of all parties.

P. Granting any such other and further relief as this Honorable Court deems just and proper.

Dated: April 30, 2020

Respectfully Submitted,

By: */s/ Joseph M. McGhee*
Plaintiff, *in Pro Per*

## VERIFICATION

I, Joseph Martin McGhee, do solemnly swear and declare under penalty of perjury that the statements and allegations of fact contained in this Third Amended Complaint and the Memorandum of Law attached and incorporated by reference herein, are true and correct to the best of my knowledge, and that this verification was executed this 30th day of April, 2020, at Coconino County Arizona.

/s/ Joseph M. McGhee

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | I hereby certify that on this 30th day of April 2020, I caused the foregoing |
| 3 | document to be filed electronically with the Clerk of Court through the CM/ECF System |
| 4 | for filing; and served on counsel of record via the Court's CM/ECF system. I further |
| 5 | certify that some of the participants in the case are not registered CM/ECF users and that |
| 6 | I have e-mailed the foregoing document to that user this same day and the document will |
| 7 | be mailed the 30th day of April 2020. |

    Michele Molinario
    Derek R. Graffious
    JONES, SKELTON & HOCHULI, P.L.C.
    40 North Central Avenue, Suite 2700
    Phoenix, Arizona 85004
    Telephone: (602) 263-1700
    Fax: (602) 200-7831
    mmolinario@jshfirm.com
    dgraffious@jshfirm.com

    *Attorneys for Defendants City of Flagstaff*
    *and Mayor Coral Evans*

    Brett W. Johnson (#021527)
    Colin P. Ahler (#023879)
    Tracy A. Olson (#034616)
    SNELL & WILMER L.L.P.
    One Arizona Center
    400 E. Van Buren, Suite 1900
    Phoenix, Arizona 85004-2202
    Telephone: 602.382.6000
    Facsimile: 602.382.6070
    bwjohnson@swlaw.com
    cahler@swlaw.com

    Anni L. Foster (#023643)
    General Counsel
    Office of Arizona Governor Douglas A. Ducey
    1700 West Washington Street
    Phoenix, Arizona 85007
    Telephone: 602-542-4331
    afoster@az.gov

    *Attorneys for Defendant Douglas A. Ducey,*
    *Governor of the State of Arizona*

/s/ *Joseph M. McGhee*