
Brett W. Johnson (#021527)
Colin P. Ahler (#023879)
Tracy A. Olson (#034616)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: bwjohnson@swlaw.com
        cahler@swlaw.com
        tolson@swlaw.com

Anni L. Foster (#023643)
General Counsel
Office of Arizona Governor Douglas A. Ducey
1700 West Washington Street
Phoenix, Arizona 85007
Telephone: 602-542-4331
E-Mail: afoster@az.gov

*Attorneys for Defendant Douglas A. Ducey, Governor of the State of Arizona*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Martin McGhee,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>City of Flagstaff, et al.<br><br>　　　　　Defendants. | No. 20-CV-08081-GMS<br><br>**MOTION FOR JUDICIAL NOTICE AND MEMORANDUM IN SUPPORT**<br><br>Assigned to: Hon. G. Murray Snow |

In accordance with Federal Rule of Evidence 201, Defendant Douglas A. Ducey, Governor of the State of Arizona, moves that the Court take judicial notice of certain facts and publicly available documents, as set forth in the following supporting memorandum.

## I.      Introduction

Federal Rule of Evidence 201(b) provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Rule 201(c)(2) further provides that the Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." "The court may take judicial notice at any stage of the proceeding." Fed. R. Evid. 201(d).

In accordance with Rule 201(b), Governor Ducey seeks judicial notice of facts and public documents, the accuracy of which cannot reasonably be questioned, and all of which are relevant to Plaintiff's constitutional and statutory challenges to Governor Ducey's state of emergency declaration and two specific executive orders concerning the 2019 novel Coronavirus ("COVID-19") pandemic. These facts and records generally fall into four categories:

1.      Statistics from the federal Centers for Disease Control and Prevention ("CDC") and Arizona Department of Health Services ("ADHS") on the reported number of cases and deaths from COVID-19. In addition, for comparison purposes, CDC statistics on the number of deaths from the (H1N1)pdm09 virus ("H1N1"), and from the United States National Archives and Records Administration ("National Archives") on the number of American deaths in the Vietnam War are also provided below.

2.      Public statements regarding COVID-19 from the United Nations World Health Organization ("WHO") or the federal government. The federal government statements are from President Donald Trump, the CDC, or the United States Department of Health and Human Services ("HHS"), and generally involve emergency declarations, public guidance, or statements regarding the transmission of COVID-19.

3.     Public statements and guidance regarding COVID-19 from Governor Ducey.

4.     Data published by the United States Census Bureau ("Census Bureau") concerning Arizona's population.

## II.    Specific Requests for Judicial Notice of Facts and Public Records

Governor Ducey requests that this Court take judicial notice of the following facts and related public records, none of which can be reasonably questioned:

### A.    Publicly-Reported Statistics on COVID-19 Cases and Deaths.

1.     As of May 4, 2020, the CDC reports 1,152,372 COVID-19 cases and 67,456 deaths in the United States. *See* Ex. A (*Cases of Coronavirus Disease (COVID-19) in the U.S.*, Centers for Disease Control and Prevention (May 4, 2020), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html).

2.     As of May 4, 2020, ADHS reports 8,919 COVID-19 cases and 362 deaths in Arizona. *See* Ex. B (*Data Dashboard*, Arizona Department of Health Services (May 4, 2020), https://azdhs.gov/preparedness/epidemiology-disease-control/infectious-disease-epidemiology/covid-19/dashboards/index.php).

3.     By comparison, from April 12, 2009 to April 10, 2010, CDC estimated there were 60.8 million cases and 12,469 deaths in the United States due to the H1N1 virus. Ex. C (*2009 H1N1 Pandemic (H1N1pdm09 virus)*, Centers for Disease Control and Prevention (June 11, 2019), https://www.cdc.gov/flu/pandemic-resources/2009-h1n1-pandemic.html).

4.     As another point of comparison, the National Archives reports that there were 58,220 U.S. military fatal casualties in the Vietnam War. *See* Ex. D (*Vietnam War U.S. Military Fatal Casualty Statistics*, National Archives (Aug. 15, 2016), https://www.archives.gov/research/military/vietnam-war/casualty-statistics).

### B.    Public Statements Regarding COVID-19 from the WHO or the Federal Government.

5.     On January 30, 2020, the WHO declared a public health emergency of international concern related to the COVID-19 outbreak. *See* Ex. E (*WHO Director-General's Statement on IHR Emergency Committee on Novel Coronavirus (2019-nCoV)*,

World Health Organization (Jan. 30, 2020), https://www.who.int/dg/speeches/detail/who-director-general-s-statement-on-ihr-emergency-committee-on-novel-coronavirus-(2019-ncov)).

6. On January 31, 2020, HHS declared a Public Health Emergency related to the COVID-19 outbreak. *See* Ex. F (*Secretary Azar Declares Public Health Emergency for United States for 2019 Novel Coronavirus*, U.S. Department of Health and Human Services (Jan. 31, 2020), https://www.hhs.gov/about/news/2020/01/31/secretary-azar-declares-public-health-emergency-us-2019-novel-coronavirus.html); Ex. G (*Determination that a Public Health Emergency Exists*, U.S. Department of Health and Human Services (Jan. 31, 2020), https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx).

7. On March 11, 2020, the WHO declared the COVID-19 outbreak a pandemic. *See* Ex. H (*WHO Director-General's Opening Remarks at the Media Briefing on COVID-19—11 March 2020*, World Health Organization (Mar. 11, 2020), https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020 ("We have therefore made the assessment that COVID-19 can be characterized as a pandemic.")). The WHO reported that at the time, there were more than 118,00 total confirmed COVID-19 cases and 4,291 global deaths. *Id.*

8. On March 13, 2020, President Trump declared a national emergency due to the health implications of the COVID-19 virus. *See* Ex. I (*Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, The White House (Mar. 13, 2020), https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/).

9. On March 15, 2020, CDC issued guidance recommending the cancellation of community-wide gatherings larger than 250 individuals. Ex. J (*Get Your Mass Gatherings or Large Community Events Ready: Interim Guidance for Coronavirus Disease 2019 (COVID-19)*, Centers for Disease Control and Prevention (Mar. 15, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/large-events/mass-gatherings-

1  ready-for-covid-19.html). The guidance also suggested that "gatherings of more than 10 people for organizations that serve higher-risk populations" should be cancelled. *Id.*

10. On March 16, 2020, CDC and President Trump issued updated guidance recommending that individuals avoid social gatherings of more than 10 people and use drive-thru, pickup, or delivery options at restaurants and bars to slow the spread of COVID-19. *See* Ex. K (*The President's Coronavirus Guidelines for America: 30 Days to Slow the Spread*, The White House (Mar. 16, 2020), https://www.whitehouse.gov/briefings-statements/coronavirus-guidelines-america/; https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf).

11. The CDC has stated that "**[t]he virus that causes COVID-19 is spreading very easily and sustainably between people**. Information from the ongoing COVID-19 pandemic suggest that this virus is spreading more efficiently than influenza, but not as efficiently as measles, which is highly contagious." Ex. L (*Coronavirus Disease 2019 (COVID-19): How COVID-19 Spreads*, Centers for Disease Control and Prevention (Apr. 13, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html).

12. According to the CDC, "[m]aintaining good social distance (about 6 feet) is very important in preventing the spread of COVID-19." *Id.* (emphasis omitted).

13. On April 15, 2020, the CDC published a factsheet on COVID-19 that states that "COVID-19 is primarily spread from person to person," and a person "can become infected by coming into close contact (about 6 feet or two arm lengths) with a person who has COVID-19." Ex. M (*What You Should Know About COVID-19 to Protect Yourself and Others*, Centers for Disease Control and Prevention (Apr. 15, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf).

14. According to the CDC factsheet, "COVID-19 symptoms can range from mild (or no symptoms) to severe illness." *Id.*

15. According to the CDC factsheet, "[e]veryone is at risk of getting COVID-19." *Id.*

16. The CDC's factsheet provides the following recommendation for individuals to protect themselves and others: "Get deliveries and takeout, and limit in-person contact as much as possible." *Id.*

17. On April 16, 2020, CDC and President Trump issued updated guidance designed for "opening up America again." Ex. N (*Guidelines: Opening Up America Again*, The White House, https://www.whitehouse.gov/wp-content/uploads/2020/04/Guidelines-for-Opening-Up-America-Again.pdf (last visited May 4, 2020)); *see also* Ex. O (*Blueprint for Testing Plans and Rapid Response Programs*, The White House, https://www.whitehouse.gov/wp-content/uploads/2020/04/Testing-Blueprint.pdf (last visited May 4, 2020)).

18. According to the April 16, 2020, guidance, States must satisfy gating criteria *before* proceeding to phasing opening including that (a) there must be a "[d]ownward trajectory of influenza-like illnesses (ILI) reported within a 14-day period AND [d]ownward trajectory of COVID-like syndromic cases reported within a 14-day period"; (b) there must be a "[d]ownward trajectory of documented cases within a 14-day period OR [d]ownward trajectory of positive tests as a percent of total tests within a 14-day period (flat or increasing volume of tests)"; and (c) hospitals must be able to "[t]reat all patients without crisis care AND [r]obust testing program in place for at-risk healthcare workers, including emerging antibody testing." *See* Ex. N.

19. The April 16 guidance states that once the gated criteria is met, States may implement a phased approach "at Governors' discretion." *Id.*

20. The CDC has also reported that "PPE shortages" and shortages of other medical equipment—including facemasks, and ventilators—"are currently posing a tremendous challenge to the US healthcare system because of the COVID-19 pandemic." Ex. P (*Strategies to Optimize the Supply of PPE and Equipment*, Centers for Disease Control and Prevention (Apr. 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/ppe-strategy/index.html).

### C. Public Statements Regarding COVID-19 from Governor Ducey.

21. On March 20, 2020 Governor Ducey issued EO 2020-11 expanding access to unemployment benefits for those affected by COVID-19 by waiving the waiting period and active job search requirements. Ex. Q (*Executive Order 2020-11: Ensuring Individuals Whose Employment Is Affected by COVID-19 Have Access to Unemployment Insurance*, Office of the Governor Doug Ducey (Mar. 20, 2020), https://azgovernor.gov/sites/default/files/eo_2020-11_sw.pdf). Specifically, EO 2020-11 expands access to "a. Individual[s] whose employer has permanently or temporarily ceased or drastically reduced operations due to COVID-19 resulting in a reduction of wages . . . ; b. individuals who, due to requirements that the individual be quarantined, are not able to work and do not have any available paid leave even if the individual has an expectation of returning to work after the quarantine is over; c. Individuals that leave employment due to a risk of exposure or infection or to care for a family member who has been infected with COVID-19; or d. Individuals that for any other scenario are separated from work for reasons related to COVID-19" so long as it is consistent with federal and guidance." *Id.*

22. On March 23, 2020 Governor Ducey issued EO 2020-12, prohibiting the closure of essential businesses. Ex. R (*Executive Order 2020-12: Prohibiting the Closure of Essential Businesses*, Office of the Governor Doug Ducey (Mar. 23, 2020), https://azgovernor.gov/sites/default/files/eo_2021_0.pdf).

23. EO 2020-12 defines in detail what constitutes an essential activity including healthcare and public health operations, human services operations, essential infrastructure operations, essential government functions, and essential businesses and operations. *Id.* Essential businesses and operations is further defined to include stores that sell groceries and medicine; food beverage and agriculture; outdoor recreation activities; organizations that provide charitable and social services; media; gas stations and businesses need for transportation; financial institutions; hardware and supply stores; critical trades; mail, post, shipping, logistics, delivery and pick-up services; educational institutions; laundry services; restaurants for consumption off-premises; supplies to work from home; supplies for

essential businesses and operations; transportation; home-based care and services; residential facilities and shelters; professional and personal services; day care centers for employees exempted by EO 2020-12; manufacture distribution, and supply chain for critical products and industries; hotels and motels; and funeral services. *Id.*

24. On April 29, 2020, Governor Ducey issued updated guidance for Arizonans and businesses, including a slide deck from a public briefing titled "Arizona Together." Ex. S (*Updated Guidance for Arizonans, Businesses*, Office of the Governor Doug Ducey (April 29, 2020), https://azgovernor.gov/governor/news/2020/04/updated-guidance-arizonans-businesses); Ex. T (*Arizona Together*, Office of the Governor Doug Ducey, https://azgovernor.gov/sites/default/files/related-docs/covid42720-pos.pdf (last visited May 4, 2020)).

25. According to the Arizona Together presentation, there were 7,202 positive cases of COVID-19 from 68,813 tests, throughout fifteen counties in Arizona, resulting in 304 deaths through April 28, 2020. Ex. T.

26. The Arizona Together presentation states that over the span of eighteen days (April 11 through April 28), between 7 to 10% of hospital inpatient beds in Arizona were occupied by COVID-19 patients, with four of the last five days reporting 10% capacity. *Id.*

27. The Arizona Together presentation states that over the span of nineteen days (April 10 through April 28), between 13 to 20% of intensive care unit hospital beds were occupied by COVID-19 patients, with seventeen of those days reporting 17% capacity or higher. *Id.*

28. The Arizona Together presentation also states that over the span of nineteen days (April 10 through April 28), between 10 to 15% of the ventilators available were being used by COVID-19 patients. *Id.*

29. The Arizona Together presentation describes a planned "Arizona testing blitz," which is a "[p]artnership with community labs to rapidly increase diagnostic testing availability at drive through sites" where "anyone **who thinks they are infected** or **recently exposed to COVID-19** can be tested." *Id.* In addition, antibody testing will be made

available in early May to provide testing "without needing a provider's order or insurance in Arizona." *Id.*

30. The Arizona Together presentation states that Governor Ducey's plan for "returning stronger" includes "increas[ing] testing to return in May while maintaining strong physical distancing" by "phas[ing] in return based on the recommendations by the CDC and health experts through May and June." *Id.*

31. According to the Arizona Together presentation, several businesses and services are currently "open" under Governor Ducey's Executive Orders relating to COVID-19, including health and public health operations, construction, manufacturing, delivery and take out dining, grocery stores, pharmacies, essential retail, gas stations, hardware stores, hotels and motels, car dealers, auto mechanics, state parks, golf courses, charitable and social services, Goodwill, media, banks, credit unions, critical trades, postal services, laundry services, and elective surgeries. *Id.*

32. The Arizona Together presentation states that other businesses and services remain temporarily "closed" under Governor Ducey's Executive Orders, including schools, universities, restaurants, bars, gyms, movie theaters, barber shops, salons, spas, concerts, spring training, large venues, college sports, Major League Baseball, casinos, NBA, weddings, bowling alleys, large outdoor events, small businesses, most retail, and limited daycares. *Id.*

33. The Arizona Together presentation outlined Governor Ducey's plan for (a) "partial reopening of retail" as applied to small businesses starting on May 4, 2020 through May 8, 2020; (b) reopening dine-in restaurants based on information from the restaurant industry and CDC guidance; and (c) executing the Executive Order authorizing elective surgeries if the healthcare organization "can demonstrate adequate capacity." *Id.*

34. On May 4, 2020, Governor Ducey issued EO 2020-34. *See* Ex. U (*Executive Order 2020-34: Building on COVID-19 Successes*, Office of the Governor Doug Ducey (May 4, 2020), https://azgovernor.gov/sites/default/files/eo_2020-34_salons_dine_in.pdf).

35. EO 2020-34 modifies EO 2020-09 by stating "dine-in services" at restaurants "may resume" starting on May 11, 2020 "provided they establish and implement protocols and best practices for businesses to address COVID-19, including enacting physical distancing policies, limiting the number of diners and following protocols as directed by the [federal government and ADHS]." *Id.*

### D. Census Data on Arizona Population.

36. The Census Bureau estimates that as of July 1, 2019, Arizona has a total population of 7,278,717. *See* Ex. V (*QuickFacts: Arizona*, United States Census Bureau, https://www.census.gov/quickfacts/fact/table/AZ/AGE775218#AGE775218 (last visited May 4, 2020)).

37. The Census Bureau reports that 17.5% of Arizona's population is aged 65 or over. *Id.*

## III. Arguments

The facts and public records listed above are all appropriate for judicial notice because they can "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). These facts are also relevant to Plaintiff's claims in this case.

### A. Publicly-Reported Statistics on COVID-19 Cases and Deaths (Paragraphs 1-4).

Courts routinely take judicial notice of statistics compiled and released by governmental agencies. *See, e.g.*, *United States v. Orozco-Acosta*, 607 F.3d 1156, 1164 n.5 (9th Cir. 2010) (taking judicial notice of statistics compiled by the U.S. Department of Homeland Security and U.S. Department of Justice); *see also United States v. Chester*, 628 F.3d 673, 692 4th Cir. 2010) (Davis, J., concurring) (citing domestic abuse statistics compiled by the CDC).[1] This Court should likewise take judicial notice of the statistics in

---

[1] *See also Citizens for Responsibility & Ethics in Wash. v. Trump*, 924 F.3d 602, 607 (D.C. Cir. 2019) (taking judicial notice of a record publicly available on the National Archives' website); *Glenn v. B&R Plastics, Inc.*, 326 F. Supp. 3d 1044, 1068 n.7 (D. Idaho 2018) (taking judicial notice of reports and statistics compiled by the CDC); *Victoria Cruises v.*

1  Paragraphs 1-4, all of which come from reliable government sources. *See In re Abbott*, 954
2  F.3d 772, 779 (5th Cir. 2020) (citing CDC statistics on COVID-19 cases and deaths).

3  These statistics are also relevant to an assessment of Plaintiff's claims. One of
4  Plaintiff's primary contentions is that the threat of COVID-19 is exaggerated and that the
5  pandemic does not result in "extreme peril to the safety of persons" within the meaning of
6  A.R.S. § 26-301(15). [*See, e.g.*, Doc 26-1 at 21; Doc 1-3 at 16-17.] The actual number of
7  COVID-19 cases and deaths, both in the United States and Arizona, directly undermines
8  this assertion and also shows that Governor Ducey had an urgent need to promote physical
9  distancing practices.

10 The same is true of statistics showing that the 2009 H1N1 virus resulted in a much
11 smaller number of deaths in the United States than COVID-19 over a much longer period,
12 particularly given that Plaintiff has asserted that "COVID-19 poses less of a health risk than
13 H1N1 – a common influenza strain." [Doc. 1-3 at 15 (emphasis omitted); *see also id.* at 16-
14 17 ("[I]f the 2009-2010 H1N1 influenza pandemic was not reasonably characterized as a
15 condition of 'extreme peril' then COVID-19 can neither be classified as such.").] Likewise,
16 the fact that COVID-19 has already resulted in more American deaths than the Vietnam
17 War illustrates the extreme peril from this virus and helps show why Governor Ducey issued
18 the two executive orders challenged by Plaintiff.

19 **B.  Public Statements Regarding COVID-19 from the WHO or the Federal Government (Paragraphs 5-20).**
20

21 Paragraphs 5-20 involve declarations, guidance, and other statements issued by the
22 federal government or the WHO (an agency of the United Nations) on COVID-19 and
23 available on government websites. They are all the proper subject of judicial notice. Courts
24 routinely take judicial notice of government publications because such documents are
25 matters of public record that can be easily verified. *See Corrie v. Caterpillar, Inc.*, 503 F.3d
26 974, 978 n.2 (9th Cir. 2007) (explaining that a court may take judicial notice of a

27 ———
28 *Changjiang Cruise Overseas Travel Co.*, 630 F. Supp. 2d 255, 263 n.3 (E.D.N.Y. 2008) ("The Court can take judicial notice of government statistics.").

- 11 -

government publication); *see also Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (taking judicial notice of public records that "can be accessed at Santa Monica's official website"); *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011) ("We have recognized the authority of a court to take judicial notice of government websites").[2]

Courts have similarly taken judicial notice of WHO publications. *See Marroquin v. Pfizer, Inc.*, 367 F. Supp. 3d 1152, 1167 n.10 (E.D. Cal. 2019) (taking judicial notice of WHO list of essential medicines published on WHO website); *Webb v. Jessamine Cty. Fiscal Ct.*, 802 F. Supp. 2d 870, 878 n.3 (E.D. Ky. 2011) (taking judicial notice of data collected and posted online by WHO).

The CDC's statements regarding the spread of COVID-19 and other characteristics relating to the virus (Paragraphs 11-15) are also a proper subject for judicial notice. Courts have taken notice of similar types of statements by the CDC about other diseases or viruses. *See Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (taking judicial notice of information concerning the transmission of Lyme Disease from the CDC website); *see also Uribe v. Perez*, Case No. 5:17-00558 CJC (ADS), 2020 WL 1318358, at *4 (C.D. Cal. Mar. 3, 2020) (report and recommendation of U.S. Magistrate Judge) (taking judicial notice of information on CDC website regarding spread of norovirus, which "is not subject to dispute because it can be accurately and readily determined from the CDC website"). Further, a federal district court recently relied on the CDC website in "tak[ing] judicial notice that, for people of advanced age, with underlying health problems, or both, COVID-

---

[2] Even if there were any concern about the accuracy of any statements from WHO or the federal government, courts may take judicial notice of the existence of public records without taking notice of the documents for the truth of the matter asserted within. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001), *overruled on other grounds recognized by*, *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125 (9th Cir. 2002) (reasoning that the court could take judicial notice that certain documents existed and that they purport certain facts, but could not take judicial notice of disputed facts within those documents "for the truth of the facts recited therein" (internal citations and quotations omitted)). This is important here because the fact that WHO and the federal government made statements concerning their understanding of COVID-19 at the time is relevant to whether Governor Ducey had a rational basis for recognizing the emergency situation and issuing executive orders, parallel to and in conjunction with the federal guidance.

19 causes severe medical conditions and has increased lethality." *Basank v. Decker*, ——— F. Supp. 3d ———, 2020 WL 1481503, at *3 (S.D.N.Y. 2020).

The public statements in Paragraphs 5-20 are also relevant to Plaintiff's claims. The fact that WHO and the federal government have recognized that COVID-19 constitutes a public health emergency directly undermines Plaintiff's contention that Governor Ducey had no grounds for making a similar determination. In addition, Governor Ducey's finding of a state of emergency is supported by the CDC's public statements that: (a) the virus is spreading very easily and sustainably; (b) transmits from person-to-person in close proximity to each other (within six feet); and (c) a person showing no symptoms can be the source of transmission. Likewise, the federally-reported information on the spread of COVID-19, combined with the federal government's related guidance on appropriate physical distancing practices, show that Governor Ducey had a rational basis for issuing executive orders that temporarily restricted on-premise restaurant dining and implemented a modified stay-at-home policy. [*See* Doc 21 at 8-11 (raising challenges to Governor Ducey's Declaration of Emergency, EO 2020-09 , EO 2020-18, and EO 2020-33); *see also* Doc 1-3 at 11-29.] Indeed, as discussed more fully in Governor Ducey's forthcoming Motion to Dismiss, the specific executive orders challenged by Plaintiff closely followed guidance from the federal government.

### C. Public Statements Regarding COVID-19 from Governor Ducey (Paragraphs 21-35).

Paragraphs 21-35 all concern public statements by Governor Ducey published on the Governor's website. As discussed, courts routinely take judicial notice of government publications and websites. *See*, *e.g.*, *Corrie*, 503 F.3d at 978 n.2.

These executive orders and other statements by Governor Ducey are relevant in several respects. *First*, they show Arizona-specific statistics on how COVID-19 has impacted Arizona, through April 28, 2020. *Second*, they show the scope of Governor Ducey's stay-at-home policy by specifically identifying the many businesses and services that remain open. *Third*, they show that the challenged executive orders are not permanent

measures. Instead, Governor Ducey has a plan for a phased re-opening, following CDC guidance and in conjunction with a "testing blitz." Indeed, on May 4, 2020, Governor Ducey issued EO 2020-34, which modified EO 2020-09 and detailed a plan for reopening "dine-in services."

### D. Census Data on Arizona Population (Paragraphs 36-37).

Paragraphs 36-37 are taken from Census Bureau data. The Ninth Circuit has explicitly held that Census Bureau statistics "meet the requirements of Rule 201(b)." *United States v. Esquivel*, 88 F.3d 722, 726-27 (9th Cir. 1996); *see also Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 332 n.10 (1961) (citing Census Bureau statistics).

Census data showing the total population of Arizona (7,278,717) and the percentage of Arizonans aged 65 or over (17.5%) undermines Plaintiff's assertion that COVID-19 does not cause "extreme peril to the safety of persons" under A.R.S. § 26-301(15). In particular, these population figures can be compared to Plaintiff's allegations that COVID-19 has an overall mortality rate of up to 1.6% and "persons over 65 years of age [are] 617% more likely to die of Covid-19 infection than those under age 65." [Doc. 21 at 5-7.] Likewise, the large number of Arizonans at risk from COVID-19 helps show that Governor Ducey had a rational basis for promoting physical distancing, including through (among other things) the two specific executive orders challenged by Plaintiff.

### IV. Conclusion

The facts and public records submitted for judicial notice can all be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). However, in the absence of judicial notice, it may be necessary for state and federal health officials to testify concerning COVID-19, demographic statistics, publicly available emergency declarations, and other facts that cannot be reasonably disputed.[3] This would divert time and resources better spent elsewhere. Accordingly, this

---

[3] For the reasons discussed in the separately-filed forthcoming Motion to Dismiss by Governor Ducey, this Court could dismiss all of Plaintiff's claims under Fed. R. Civ. P. 12(b)(6), even if it does not take judicial notice of any facts.

- 14 -

Court should grant the motion and take judicial notice of the facts specified in this motion.

DATED this 4th day of May, 2020.

                      SNELL & WILMER L.L.P.

By: s/ *Brett W. Johnson*
    Brett W. Johnson
    Colin P. Ahler
    Tracy A. Olson
    One Arizona Center
    400 E. Van Buren, Suite 1900
    Phoenix, Arizona 85004-2202

    Anni L. Foster
    Office of Arizona Governor Douglas A. Ducey
    1700 West Washington Street
    Phoenix, Arizona 85007

*Attorneys for Defendant Douglas A. Ducey, Governor of the State of Arizona*

# **CERTIFICATE OF SERVICE**

I certify that on May 4, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, which electronically sends a copy of same on to:

Joseph Martin McGhee
P.O. Box 91
Flagstaff, AZ 86002
mcghee.v.city.of.flagstaff.et.al@gmail.com
spurfy@icloud.com
*Plaintiff, in Pro Per*

Michele Molinario
Derek R. Graffious
JONES, SKELTON & HOCHULI, P.L.C.
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-1700
Fax: (602) 200-7831
mmolinario@jshfirm.com
dgraffious@jshfirm.com
Attorneys for Defendants City of Flagstaff
and Mayor Coral Evans

 s/ *Richard A. Schaan*