Brett W. Johnson (#021527)
Colin P. Ahler (#023879)
Tracy A. Olson (#034616)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: bwjohnson@swlaw.com
cahler@swlaw.com
tolson@swlaw.com

Anni L. Foster (#023643)
General Counsel
Office of Arizona Governor Douglas A. Ducey
1700 West Washington Street
Phoenix, Arizona 85007
Telephone: 602-542-4331
E-Mail: afoster@az.gov

*Attorneys for Defendant Douglas A. Ducey,
Governor of the State of Arizona*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Martin McGhee, | No. 20-CV-08081-GMS |
| Plaintiff, | |
| v. | **MOTION TO DISMISS AND MEMORANDUM IN SUPPORT** |
| City of Flagstaff, et al. | |
| Defendants. | Assigned to: Hon. G. Murray Snow |

Defendant Douglas A. Ducey, Governor of the State of Arizona, moves to dismiss the Verified Third Amended Complaint for Declaratory and Injunctive Relief ("TAC"), [Doc. 21], in its entirety and with prejudice under Rule 12(b)(6), Fed. R. Civ. P. This motion is supported by the following memorandum and Governor Ducey's Motion for Judicial Notice of facts relating to the 2019 novel Coronavirus ("COVID-19") pandemic. [Doc. 27.] A Notice and Certification of Conferral has been filed contemporaneously with this Motion; the parties have conferred and did not agree the pleadings could be cured by permissible amendment.

## I. Introduction

This action asserts constitutional or statutory challenges to three acts by Governor Ducey directed towards combating COVID-19: (1) a March 11, 2020 Declaration of Emergency; (2) Executive Order ("EO") 2020-09, which issued on March 19 and restricted the operations of certain businesses, such as restaurants; and (3) EO 2020-33, which, on April 29, extended and modified a previous policy that all Arizonans limit their time away from home. Plaintiff cannot state a cognizable claim against these acts.

State of Emergency Declaration. Under A.R.S. § 26-301(15), Governor Ducey may declare a state of emergency in "conditions of disaster" or during times of "extreme peril to the safety of persons." This statute specifically references an "epidemic" as one type of authorizing event. Because Plaintiff admits that COVID-19 is a pandemic (a more serious type of epidemic), Governor Ducey had authority to declare an emergency in Arizona.

EO 2020-09. Plaintiff's procedural due process claim to this order (which was modified on May 4 to resume dine-in services on May 11, subject to physical distancing and other protocols) fails because he has no constitutionally-protected property interest in private at-will employment. Alternatively, Plaintiff's allegations of incidental harm cannot provide the requisite "deprivation" for a procedural due process claim. Plaintiff's substantive due process claim also fails because temporary restrictions on dine-in restaurant service is rationally related to the State's legitimate interest in slowing the spread of COVID-19.

EO 2020-33. Plaintiff's procedural due process challenge fails because this order broadly applies to all Arizonans, reflecting a quasi-legislative exercise of Governor Ducey's emergency police powers. In addition, Plaintiff's procedural and substantive due process challenges *both* fail because: (1) EO 2020-33 specifically exempts constitutionally protected activities and, thus, does not violate Plaintiff's freedom of movement or travel; and (2) Supreme Court precedent on public health emergencies requires Plaintiff to show that EO 2020-33 has no "real or substantial relation" to the COVID-19 crisis or is "beyond question, in palpable conflict with the Constitution," and Plaintiff cannot plausibly allege facts meeting that high bar. *Jacobson v. Massachusetts*, 197 U.S. 11, 31 (1905). Lastly, the Arizona statutes

on quarantine procedures have no application to Plaintiff, who is nowhere close to being under an actual "quarantine."

Plaintiff's pleading defects cannot be cured by further amendment. To the contrary, Plaintiff has already made several attempts at amendment, and even filed a TAC that was *substantially different* than the one attached to his motion for leave to amend. [*See* Docs. 14-2, Doc. 21.] Because Plaintiff cannot state any constitutional claim against Governor Ducey, he has no right to relief under 42 U.S.C. § 1983. Dismissal with prejudice is appropriate.

## II.  Background

"As all are painfully aware, our nation faces a public health emergency caused by the exponential spread of COVID-19 . . . ." *In re Abbott*, 954 F.3d 772, 779 (5th Cir. 2020). As of May 4, 2020, the Centers for Disease Control and Prevention ("CDC") reports 1,152,372 COVID-19 cases and 67,456 deaths in the United States. [Doc. 27 at ¶ 1]. The Arizona Department of Health Services ("ADHS") reports 8,919 cases and 362 deaths in Arizona as of May 4, 2020. [*Id.* at ¶ 2.] In just a few months, the American death toll from COVID-19 has surpassed the number of Americans who died in the Vietnam War. [*Id.* at ¶ 4.]

According to the CDC, "**[t]he virus that causes COVID-19 is spreading very easily and sustainably between people**." [*Id.* at ¶ 11 (emphasis in original).] The CDC also reports that "COVID-19 is primarily spread from person to person," and a person "can become infected by coming into close contact (about 6 feet or two arm lengths) with a person who has COVID-19." [*Id.* at ¶ 13.] "Everyone is at risk of getting COVID-19," and a person infected with this virus may show "no symptoms." [*Id.* at ¶¶ 14-15.] To protect themselves and others, the CDC recommends that people "[g]et deliveries and takeout, and *limit in-person contact as much as possible*." [*Id.* at ¶ 16 (emphasis added).]

The timeline of important events reflects the rapidly growing threat from COVID-19. On January 30, 2020, the World Health Organization ("WHO") declared a public health emergency of international concern. [*Id.* at ¶ 5.] The next day, the federal Department of Health and Human Services ("HHS") declared a Public Health Emergency. [*Id.* at ¶ 6.]

On March 11, 2020, the WHO declared the COVID-19 outbreak a pandemic. [*Id.* at ¶ 7.] Later that same day, Governor Ducey issued a Declaration of Emergency for Arizona, citing to the WHO and HHS declarations. [Doc. 21 at ¶ 6; Doc. 21-13 at 1.]

On March 13, 2020, President Donald Trump declared a national emergency. [Doc. 27 at ¶ 8.] On March 16, 2020, the CDC and President Trump issued guidance recommending that individuals avoid social gatherings of more than ten people and use drive-thru, pickup, or delivery options at restaurants and bars. [*Id.* at ¶ 10.][1]

On March 19, 2020, Governor Ducey issued EO 2020-09, which, among other things, mandated that "all restaurants in counties of the State with confirmed cases of COVID-19 shall close access to on-site dining until further notice. Restaurants may continue serving the public through pick up, delivery, and drive-thru operations." [Doc. 21 at ¶ 8; Doc 21-16 at 2.] EO 2020-09 cited WHO's declaration of a global pandemic, President Trump's emergency declaration, and CDC guidance. [Doc 21-16 at 1.]

On March 30, 2020, Governor Ducey issued EO 2020-18, which implemented a "Stay Home, Stay Healthy, Stay Connected" policy under which "all individuals in the State of Arizona shall limit their time away from their place of residence or property." [Doc. 21 at ¶ 10; Doc. 21-18 at ¶ 2.] The executive order provided several exceptions, including participating in or using "Essential Activities," "Essential Functions," or "Essential Businesses." [Doc. 21-18 at ¶ 2.] Among other things, "Essential Activities" include "[e]ngaging in constitutionally protected activities such as speech and religion . . . provided that such is conducted in a manner that provides appropriate physical distancing to the extent feasible." [*Id.* at ¶ 4(f).] "Essential Activities" also include "[e]ngaging in outdoor exercise activities, such as walking, hiking, running, biking or golfing, but only if appropriate physical distancing practices are used." [*Id.* at ¶ 4(d).] Importantly, "[n]o person shall be required to provide documentation or proof of their activities to justify their activities under this order." [*Id.* at ¶ 2(e).] EO 2020-18 was made effective until April 30, 2020. [*Id.* at ¶ 17.]

---

[1] The March 16 guidance expired on April 30, but President Trump issued new guidance that allows a phased re-opening in states that satisfy strict gating criteria. [*See id.* at ¶¶ 17-19.]

On April 29, 2020, Governor Ducey issued EO 2020-33, which implemented a modified "Stay Home, Stay Healthy, Stay Connected" policy until May 15, 2020. [Doc. 21 at ¶ 11; Doc. 21-19 at ¶¶ 1, 17.] This order maintained protections for essential businesses, functions, and activities, and expanded the ability to visit retail businesses. [Doc. 21-19 at ¶¶ 2(e), 4(i), 4(k), 4(l).] "Prior to any enforcement action being taken to enforce [EO 2020-33]… a person shall be notified and given an opportunity to comply." [*Id.* at ¶ 14.]

On May 4, 2020, Governor Ducey issued EO 2020-34, which modified EO 2020-09. [Doc. 27 at ¶ 34.] Most relevant here, EO 2020-34 states that "dine-in services" at restaurants "may resume" on May 11, 2020, "provided they establish and implement protocols and best practices for businesses to address COVID-19, including enacting physical distancing policies, limiting the number of diners and following protocols as directed by the [federal government and ADHS]." [*Id.* at ¶ 35.]

### III. Argument

To survive a Rule 12(b)(6) challenge, a complaint must allege sufficient facts to state a claim that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). None of Plaintiff's claims satisfy this standard.

#### A. Plaintiff has no plausible claim against the emergency declaration.

Under A.R.S. § 26-303(D), "[t]he governor may proclaim a state of emergency . . . if the governor finds that circumstances described in [A.R.S. § 26-301(15)] exist." Plaintiff argues that Governor Ducey somehow lacked authority to declare a state of emergency because COVID-19 allegedly does not cause "extreme peril" within the meaning of A.R.S. § 26-301(15). [Doc. 26-1 at 21.] As detailed below, however, a straightforward application of this definitional statute to Plaintiff's own allegations makes clear that extreme peril was (and continues to be) present. Governor Ducey, thus, had discretion to "find[] that circumstances described in [A.R.S. § 26-301(15)] exist." A.R.S. § 26-303(D).

Two canons of statutory interpretation are relevant. *First*, "the words of [an Arizona] statute are to be given their ordinary meaning unless it appears from the context or otherwise that a different meaning is intended." *State v. Miller*, 100 Ariz. 288, 296 (1966). *Second*,

courts "should liberally construe a statute whose purpose is the protection of the public in order to achieve its objective." *Better Homes Const., Inc. v. Goldwater*, 203 Ariz. 295, 300 ¶ 19 (App. 2002); *see also D.H. Blattner & Sons, Inc. v. Sec'y of Labor, Mine Safety & Health Admin.*, 152 F.3d 1102, 1105 (9th Cir. 1998) (similar).

Here, this Court's statutory analysis need not go further than A.R.S. § 26-301(15)'s plain language. In relevant part, A.R.S. § 26-301(15) defines a "[s]tate of emergency" as "the duly proclaimed existence of conditions of disaster or of extreme peril to the safety of persons or property within the state caused by air pollution, fire, flood or floodwater, storm, *epidemic*, riot, earthquake or other causes." (emphasis added).

Plaintiff concedes that "**COVID-19 Is A Pandemic**." [Doc. 21 at 1 (emphasis in original).] By definition, "*[a] pandemic is a kind of epidemic*; one which has spread across a wider geographic range than an epidemic, and which has affected a significant portion of the population." *Pandemic*, Merriam-Webster, https://www.merriam-webster.com/dictionary/pandemic (last visited May 4, 2020) (emphasis added). COVID-19 thus constitutes one of the specifically-enumerated "causes" of "extreme peril to the safety of persons" in A.R.S. § 26-301(15).

But, even if the admitted existence of a pandemic was not enough, Plaintiff's allegations independently establish "extreme peril to the safety of persons." A.R.S. § 26-301(15). Plaintiff contends that "Scientific Data" on COVID-19 shows a mortality rate of *18%* for persons above 80 years old, *9.8%* for persons aged 70-79, and *4.6%* for persons aged 60-69. [Doc. 21 at 5.] Under any interpretation, death qualifies as "extreme peril to the safety of persons." A.R.S. § 26-301(15). Further, Plaintiff's argument that only certain segments of the population face these mortality rates, [Doc. 26-1 at 21], is irrelevant to A.R.S. § 26-301(15), which does not require that the persons at risk of death surpass some quantitative amount. The word "persons" in this statute means *any* persons in the State.[2]

---

[2] To the extent that Plaintiff seeks a ruling on how many persons must be in peril, this issue is a nonjusticiable political question. *See Nixon v. United States*, 506 U.S. 224, 228 (1993).

- 6 -

Even if A.R.S. § 26-301(15) did include some quantitative threshold, the risks from COVID-19 easily surpass any *de minimis* amount. Plaintiff contends that "[t]aking the average mortality rate of infected individuals across all of age groups gives an overall mortality rate of 1.6%." [Doc. 21 at 5.] Taking this statistic at face value, *116,459 persons* out of Arizona's total population of 7,278,717 could die. [Doc. 27 at ¶ 36.][3] Governor Ducey had no obligation to wait for these risks to become reality before taking measures to slow COVID-19's spread. *See* A.R.S. § 26-303(E) (authorizing Governor to use emergency powers "to prevent or alleviate actual and threatened damage"). This is especially the case when such action is taken parallel to the federal government and other states.

In addition, Arizona's large elderly population further confirms the existence of extreme peril. Census data indicates that 17.5% of Arizona's population is aged 65 or over, which equates to roughly *1,273,775* persons. [Doc. 27 at ¶ 37.] Plaintiff alleges that, based on scientific research, "persons over 65 years of age [are] *617% more likely to die* of Covid-19 infection than those under age 65." [Doc. 21 at 6 (emphasis added).]

In any event, "extreme peril" is not required; the Governor can also declare a state of emergency based on "conditions of disaster." A.R.S. § 26-301(15). Plaintiff does not suggest that "conditions of disaster" were absent here. [*See* Doc. 26-1 at 21.] The admitted existence of a pandemic with high mortality rates for different population groups is more than sufficient to establish this alternative basis for initiating emergency powers. *See Friends of DeVito v. Wolf*, --- A.3d ----, 2020 WL 1847100, at *12 (Pa. 2020) (holding that "the COVID-19 pandemic qualifies as a 'natural disaster'" under a similar Pennsylvania statute).

All of these defects with Plaintiff's statutory claim show that the Arizona Legislature broadly defined "state of emergency" in order to give the Governor wide latitude to determine when circumstances reach that level. *See Better Homes Constr. Inc.*, 203 Ariz. at 300 ¶ 19 (statutes relating to public health receive liberal construction). Here, Governor Ducey's finding of a state of emergency easily fell within his discretionary authority and is consistent

---

[3] Plaintiff also appears to allege an alternative mortality rate of 0.12%. [Doc. 21 at 6.] Applying this rate to Arizona's population equals 8,734 persons, which is still substantial.

with federal guidance and similar actions by other state governors and other countries. Plaintiff's statutory challenge to that emergency declaration should be dismissed.

### B. Plaintiff has no plausible claim against Executive Order 2020-09.

Plaintiff challenges EO 2020-09, which restricts the operations of certain non-essential businesses, on procedural and substantive due process grounds. [Doc. 21 at 9 ¶ 12.] Neither theory states a plausible claim for relief.

#### 1. Plaintiff cannot state a procedural due process claim.

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ.*, 149 F.3d 971, 982 (9th Cir. 1998). Here, Plaintiff's claim fails at the first step; he cannot allege a constitutionally protected interest or that Governor Ducey has "deprived" such an interest.

Plaintiff appears to base his claim on the alleged loss of a prior restaurant job, arguing that EO 2020-09 seized wages without due process. [*See* Doc. 21 at ¶ 12; *see also* Doc. 26-1 at 17 (alleging that EO 2020-09 "depriv[es] … Arizonans of … their wages"); Doc. 6 at 1.] But that prior job is *not* constitutionally protected. To have a protected interest in private employment, a plaintiff "must show that he had more than a 'unilateral expectation' of continued employment; he must demonstrate a 'legitimate claim of entitlement.'" *Merritt v. Mackey*, 827 F.2d 1368, 1371 (9th Cir. 1987) (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). At-will employment does not meet this standard. *See Minshew v. Donley*, 911 F. Supp. 2d 1043, 1064 (D. Nev. 2012) (holding that "at-will employee who could be terminated at any time without liability . . . did not have a legitimate claim of entitlement to continued employment sufficient to be a constitutionally protected property interest"). Moreover, Arizona law presumes that employment contracts "of indefinite duration" are at-will. *Kavanagh v. City of Phoenix*, 87 F. Supp. 2d 958, 966 (D. Ariz. 2000).

Here, Plaintiff does not allege any facts to suggest that his prior restaurant job fell outside the traditional at-will framework. As such, he does not have the requisite property interest to sustain a procedural due process claim.

In addition, even if his prior job was somehow constitutionally protected, Plaintiff cannot establish that the *State* deprived him of this alleged property by temporarily restricting the operations of certain businesses, including restaurants. At best, Plaintiff alleges an *indirect* economic harm from EO 2020-09. Even as to that indirect harm, the TAC is remarkably vague, saying *nothing* about: Plaintiff's prior job, including what position he held or when or how he lost that position; his current employment situation; any efforts to seek another restaurant job, such as a location serving delivery or curbside; or his eligibility for the multitude of unemployment benefits resulting from COVID-19.

Regardless, "[p]rocedural due process protections do not extend to those who suffer indirect harm from government action." *Dumas v. Kipp*, 90 F.3d 386, 392 (9th Cir. 1996) (dismissing procedural due process claim brought by indirect beneficiaries of student loan program); *see also Sierra Nev. SW Enters. Ltd. v. Douglas County*, 506 Fed. App'x 663, 665 (9th Cir. 2013) (holding that "indirect impact" of decreased market demand for property is "not a 'deprivation' for purposes of procedural due process"). Because Plaintiff cannot allege the necessary deprivation for a due process challenge, that claim should be dismissed.

### 2. Plaintiff cannot state a substantive due process claim.

Plaintiff's substantive due process claim against EO 2020-09, based on an alleged infringement of the "right to work," also fails to state a plausible claim. [Doc. 21 at ¶ 12.][4] Although there is "some generalized due process right to choose one's field of private employment," this right "is nevertheless subject to *reasonable* government regulation." *Conn v. Gabbert*, 526 U.S. 286, 291-92 (1999) (emphasis added). Thus, rational basis review applies to state action that prevents someone from pursuing a profession. *See Engquist v. Oregon Dep't of Agric.*, 478 F.3d 985, 997 (9th Cir. 2007); *Dittman v. California*, 191 F.3d 1020, 1031 n.5 (9th Cir. 1999) ("The [Supreme] Court has never held that the 'right' to pursue a profession is a *fundamental* right . . . .").

---

[4] The TAC does not make clear whether Plaintiff's claim is based on his alleged choice of profession or his specific prior job position. Under either analysis, Plaintiff's claims fail. During the L.R.Civ. 12.1(c) conferral, Plaintiff indicated that he may voluntarily dismiss his claims relating to EO 2020-9.

When rational basis review applies, "the plaintiff bears a heavy burden." *Dittman*, 191 F.3d at 1031. Courts "do not require that the government's action actually advance its stated purposes, but merely look to see whether the government *could* have had a legitimate reason for acting as it did." *Id.* (quoting *Halverson v. Skagit County*, 42 F.3d 1257, 1262 (9th Cir. 1995)). "If it is '*at least fairly debatable*' that the [government's] conduct is rationally related to a legitimate governmental interest, there has been no violation of substantive due process." *Halverson*, 42 F.3d at 1262 (quoting *Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994) (emphasis added).

Here, EO 2020-09 easily meets the rational basis test. Protecting public health is a legitimate government interest. *See, e.g.*, *Watson v. Maryland*, 218 U.S. 173, 176 (1910) ("It is too well settled to require discussion . . . that the police power of the states extends to the regulation of certain trades and callings, particularly those which closely concern the public health."). This interest takes on particular significance in a pandemic, when hospitals and other medical resources are at risk of becoming overburdened. *See Jacobson*, 197 U.S. at 27 (recognizing right of community "to protect itself against an epidemic of disease").

EO 2020-09 is also rationally related to slowing the person-to-person spread of COVID-19. Plaintiff admits that "[c]ommunity transmission has been reported in all 50 states." [Doc. 21 at 4 n.2.] And the TAC attaches studies discussing exponential spread between persons. [*See* Doc. 21-5 at 2 ("[H]uman-to-human transmission occurred at a high rate in Wuhan and other areas of the Hubei province, leading to an exponential growth of incidence."); *see also* Doc. 21 at 5 (referencing same study).] The CDC has similarly reported that "COVID-19 is primarily spread from person to person," infected persons can show "no symptoms," and "[e]veryone is at risk of getting COVID-19." [Doc. 27 at ¶¶ 13-15.]

Restricting large gatherings of people, including in restaurants where people gather in groups in close proximity, is a logical way to address these transmission-related challenges. Indeed, just three days before Governor Ducey issued EO 2020-09, the federal government recommended that individuals avoid social gatherings of more than 10 people and use drive-thru, pickup, or delivery options at restaurants. [*Id.* at ¶ 10.] EO 2020-09 followed the then-

existing federal guidance, including by temporarily prohibiting on-premise restaurant dining.[5] [*See* Doc. 21-16 at 1]; *see also Friends of Devito*, 2020 WL 1847100, at *24 (rejecting statutory and constitutional challenges to Pennsylvania Governor's closure of certain businesses; "There is no question that the containment and suppression of COVID-19 and the sickness and death it causes is a substantial governmental interest."); *Globe Sch. Dist. No. 1 of Globe v. Bd. of Health of City of Globe*, 20 Ariz. 208, 221 (1919) (stating that order closing public schools due to Spanish Flu epidemic was "a valid, enforceable order and regulation for the purpose of reasonably protecting the public health").

Moreover, because EO 2020-09 is rationally related to combating an ongoing pandemic, Plaintiff cannot possibly establish that this order is "conscience-shocking." [Doc. 26-1 at 17]; *see also Lumbreras v. Roberts*, 319 F. Supp. 2d 1191, 1212 (D. Or. 2004) (holding that government action does not shock the conscience unless it "was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." (internal quotations and citation omitted)). Given Plaintiff's admissions that COVID-19 is a pandemic with mortality rates of up to 18% for certain age groups, *failing to act* would have been conscience-shocking. [Doc. 21 at 1, 5.] Plaintiff's substantive due process challenge to EO 2020-09 should be dismissed.

### C. Plaintiff has no plausible claim against Executive Order 2020-33.

Plaintiff contends that EO 2020-33, the modified stay-at-home directive, violates procedural and substantive due process rights and contravenes Arizona's statutes on quarantine procedures. [Doc. 21 at 9 ¶ 12 and 10-11.] His theories are all legally deficient.

#### 1. Plaintiff cannot state a procedural due process claim.

##### a. Quasi-legislative acts do not create due process rights.

Because EO 2020-33 applied prospectively to *all* Arizonans, that order did not confer

---

[5] Due process concerns are not implicated by a "brief interruption" in "the right to engage in a calling." *Conn*, 526 U.S. at 292. EO 2020-09 is temporary. [Doc. 21-16 at ¶ 7.] Indeed, that order has already been modified by EO 2020-34, which authorizes dine-in services to resume on May 11, subject to certain protocols. [Doc. 27 at ¶¶ 34-35.] Given this change, Plaintiff's constitutional challenge to EO 2020-09 appears to be moot. *See Bd. of Trustees of Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195, 1199 (9th Cir. 2019).

- 11 -

due process rights to Plaintiff. "Before due process rights attach, a person must show that the deprivation occurred as a result of an adjudicatory process rather than a legislative process." *Blocktree Props. LLC v. Pub. Util. Dist. No. 2*, 380 F. Supp. 3d 1102, 1121 (E.D. Wash. 2019) (citing *Harris v. County of Riverside*, 904 F.2d 497, 501 (9th Cir. 1990)).

Courts have found "little guidance in formalistic distinctions" in applying this rule. *Harris*, 904 F.2d at 501. Instead, "[i]f the matter is one in which '*all are equally concerned*,' the matter is a legislative process and due process rights do not attach." *Blocktree*, 380 F. Supp. 3d at 1121 (quoting *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915)) (emphasis added). By contrast, "[i]f the matter is one in which a 'relatively small number of persons [are] concerned, who [are] exceptionally affected, in each case upon individual grounds,' then the process is adjudicatory and due process rights attach." *Id.* Thus, due process rights do not attach to "the exercise of a quasi-legislative function" that "operates prospectively and establishes rules of general conduct binding upon many persons." *Brown v. Winter*, 50 F. Supp. 804, 806 (W.D. Wis. 1943).

Here, EO 2020-33 involves a quasi-legislative action in which "all [Arizonans] are equally concerned." *Bi-Metallic*, 239 U.S. at 445. Plaintiff focuses on Paragraph 6 of this order, which states that "*[a]ll* persons may leave their place of residence only for Essential Activities, to participate in or receive Essential Governmental Functions, or to participate in or fulfill Essential Functions." [Doc. 21-19 at ¶ 6 (emphasis added).] Because Plaintiff does not suggest he is "exceptionally affected" by this restriction, EO 2020-33 did not provide him with procedural due process rights. *Bi-Metallic*, 239 U.S. at 445.

### b. Plaintiff cannot allege the requisite deprivation.

The plain language of EO 2020-33 also directly undermines Plaintiff's contention that this order somehow deprives him of free movement and travel. [*See* Doc. 21 at ¶ 12]; *see also Brewster*, 149 F.3d at 982 (stating essential elements of a procedural due process claim). EO 2020-33 states that all Arizonans may continue to "[e]ngag[e] in constitutionally protected activities . . . in a manner that provides appropriate physical distancing to the extent feasible." [Doc. 21-19 at ¶ 4(k).] To the extent that freedom of movement and travel are constitutionally

- 12 -

protected, they fall within this express authorization. *See* Ariz. Att'y Gen. Op. No. I20-008 (Apr. 30, 2020) (concluding that predecessor order to EO 2020-33 did not prohibit church attendance because of exemption for "constitutionally protected activities").[6]

EO 2020-33 also specifically authorizes movement and travel by allowing "outdoor exercise activities, such as walking, hiking, running, biking or golfing, but only if appropriate physical distancing practices are used." [*Id*. at ¶ 4(i).] Moreover, individuals need not "provide documentation or proof of their activities to justify their activities under this order." [*Id*. at ¶ 2(e).] Notably, Plaintiff does not identify any specific movement or travel that he would like to engage in that would somehow be precluded by EO 2020-33.

The direction that all Arizonans follow physical distancing practices "to the extent feasible" when engaged in "constitutionally protected activities" does not deprive Plaintiff's alleged rights to freedom and travel. [*Id*. at ¶ 4(k).] *First*, these freedoms do not encompass a right to put others at risk of catching a deadly virus. *See Prince v. Massachusetts*, 321 U.S. 158, 166-67 (1944) ("The right to practice religion freely does not include liberty to expose the community . . . to communicable disease."). *Second*, freedom to travel does not include a right to use one's preferred mode of transportation. *See Miller v. Reed*, 176 F.3d 1202, 1205 (9th Cir. 1999) ("[B]urdens on a single mode of transportation do not implicate the right to interstate travel."). *Third*, by using the phrase "to the extent feasible," EO 2020-33 "does not impose an absolute six-foot social distancing requirement on essential activities that are constitutionally protected." Ariz. Att'y Gen. Op. No. I20-008, at 1-1 and 1-2. Plaintiff thus cannot allege the requisite deprivation for a procedural due process claim.

### c. Plaintiff cannot plausibly meet the *Jacobson* standard.

Even if Plaintiff could somehow show that EO 2020-33 was adjudicatory and deprived him of a protected liberty interest (he cannot), his due process claim is still deficient. In *Jacobson*, the Supreme Court established a "framework governing" constitutional challenges

---

[6] The Ninth Circuit has not decided whether individuals have a fundamental right to intrastate travel. *See Nunez v. City of San Diego*, 114 F.3d 935, 944 n.7 (9th Cir. 1997). This Court need not reach that issue because Plaintiff cannot allege a deprivation of such travel.

- 13 -

to "emergency public health measures." *Abbott*, 954 F.3d at 778 (applying *Jacobson* to assess executive order relating to COVID-19); *see also Martinko v. Whitmer*, Case No. 20-00062-MM, at 10-13 (Mich. Ct. Cl. Apr. 29, 2020) (applying *Jacobson* in assessing procedural due process challenge to Michigan stay-at-home order).[7] Plaintiff cannot plausibly show that EO 2020-33 violates the deferential *Jacobson* standard.

*Jacobson* involved a due process challenge to a state law mandating smallpox vaccinations. *See Jacobson*, 197 U.S. at 26-27. In upholding this law, the Supreme Court reasoned that "a community has the right to protect itself against an epidemic of disease which threatens the safety of its members." *Id.* at 27. Thus, "'[u]nder the pressure of great dangers,' constitutional rights may be reasonably restricted 'as the safety of the general public may demand.'" *Abbott*, 954 F.3d at 778 (quoting *Jacobson,* 197 U.S at 29). "That settled rule allows the state to restrict, for example, one's right to peaceably assemble, to publicly worship, *to travel, and even to leave one's home*." *Id.* (collecting Supreme Court authorities) (emphasis added). "The bottom line is this: when faced with a society threatening epidemic, a state may implement emergency measures that curtail constitutional rights so long as the measures [1] have at least some 'real or substantial relation' to the public health crisis and [2] are not 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law.'" *Id. at* 784-85 (quoting *Jacobson*, 197 U.S at 31).

Here, Plaintiff cannot allege facts to undermine either prong of the *Jacobson* test. *First*, based on Plaintiff's own allegations and judicially-noticeable facts, EO 2020-33 plainly has "at least some 'real or substantial relation'" to COVID-19. *Id.* As discussed, this virus spreads easily and sustainably from person-to-person, community transmission has been reported in all 50 states (and in almost every country), and a person showing no symptoms can spread COVID-19. *See supra* Section III.B.2. By promoting physical distancing through a "Stay Home" policy, EO 2020-33 is genuinely related to combating the spread of COVID-19, which Plaintiff admits poses great risk for various population groups. [*See* Doc. 21 at 5-

---

[7] The *Martinko* decision, is available at:
https://www.michigan.gov/documents/ag/20200429_Opinion_and_Order_688921_7.pdf.

- 14 -

7.] Indeed, EO 2020-33 follows the CDC recommendation that, to protect themselves and others, persons should "limit in-person contact as much as possible." [Doc. 27 at ¶ 16.] The order is also similar to, although in many ways less restrictive than, other state action: "Faced with exponential growth of COVID-19 cases, states have closed schools, sealed off nursing homes, banned social gatherings, quarantined travelers, prohibited churches from holding public worship services, and locked down entire cities." *Abbott*, 954 F.3d at 787.

Any contention that Governor Ducey had "better" or less-restrictive options is irrelevant. "*Jacobson* disclaimed any judicial power to second-guess the state's policy choices in crafting emergency public health measures." *Id.* at 784; *see also Martinko,* Case No. 20-00062-MM, at 13 ("Monday morning quarterbacking is the role of sports fans, not courts reviewing the factual basis supporting executive action to protect the public health.").

*Second*, contrary to Plaintiff's innuendo, EO 2020-33 is not "beyond question, in palpable conflict with the Constitution." *Jacobson*, 197 U.S. at 31. Instead, the order specifically authorizes "constitutionally protected activities" and "outdoor exercise," without requiring any person to justify their activities through "documentation or proof of their activities." [Doc. 21-19 at ¶¶ 2(e), 4(i), 4(k).] Plaintiff may continue to move outside his home, provided that he follows physical distancing practices "to the extent feasible." [*Id.* at 4(k).] Again, Plaintiff has no constitutional right to threaten the health of others or, alternatively, be threatened by others. *See Prince*, 321 U.S. at 166-67.

**2.     Plaintiff cannot state a substantive due process claim.**

Plaintiff's substantive due process challenge to EO 2020-33 fails for similar reasons as his procedural claim. Strict scrutiny only applies to government action that actually "impinges" a fundamental right. *See Nunez*, 114 F.3d at 944. Here, EO 2020-33 does *not* impinge on Plaintiff's movement or travel but instead explicitly protects those rights as "Essential Activities" while promoting physical distancing practices. [*See* Doc. 21-19 at ¶ 4]; *see also Miller*, 176 F.3d at 1205 (recognizing that not all burdens on interstate travel "constitute a violation of that right").

Because EO 2020-33 does not infringe on any fundamental right, rational basis review

- 15 -

applies. *See Dittman*, 191 F.3d at 1031. EO 2020-33 easily meets this deferential standard because the order's promotion of physical distancing practices has a genuine relationship to Arizona's legitimate interest in slowing the spread of COVID-19 and is consistent with federal guidance, other state, and other countries' action relating to this virus. Given this direct relationship to global public health, Plaintiff cannot state a plausible claim that EO 2020-33 is "conscious-shocking." [Doc. 26-1 at 15]; *see also Lumbreras*, 319 F. Supp. 2d at 1212 (describing demanding "shock the conscience" standard).

Moreover, even if Plaintiff could somehow allege that EO 2020-33 infringes on a fundamental right, this order would be reviewed under the Supreme Court's *Jacobson* framework for evaluating a state actions in the context of a pandemic. *See Abbott*, 954 F.3d at 777-78 (applying *Jacobson* framework to constitutional challenge to executive order by Texas Governor relating to COVID-19); *see also Martinko*, Case No. 20-00062-MM, at 11 (applying *Jacobson* test to substantive due process claims against Michigan stay-at-home order). Similar to rational basis review, that framework is highly deferential and does not authorize a court to "second-guess the state's policy choices." *Abbott,* 954 F.3d at 784. As discussed, Plaintiff cannot state a plausible claim that EO 2020-33 violates the *Jacobson* standard. *See supra* Section III.C.1.c. Under either rational basis or *Jacobson* review, Plaintiff's due process challenge to EO 2020-33 fails.

### 3. The Arizona quarantine statutes are irrelevant to Plaintiff.

Characterizing EO 2020-33 as "a *per se* mass quarantine order," Plaintiff appears to assert that Governor Ducey could not lawfully issue this order unless he followed the Arizona statutes setting forth quarantine standards and procedures. [Doc. 21 at 10-11; *see also* Doc. 26-1 at 5-11.] This hyperbolic argument is unfounded; a person under quarantine in Arizona has significantly less individual freedoms than someone, like Plaintiff, generally subject to EO 2020-33. Simply, Plaintiff is *not* under quarantine.

Under A.R.S. § 36-788(D), "[a] person subject to isolation or quarantine . . . *shall not go beyond the isolation or quarantine premises* . . . ." (emphasis added). The "quarantine premises" can be "the residence of the person quarantined" or another location determined

by health officials. A.R.S. § 36-788(B). In addition, a person in "isolation or quarantine" is strictly prohibited from having any contact with other persons, with a few limited exceptions, such as health providers. A.R.S. § 36-788(D). Family members are not exempted from this restriction. It is precisely because of these types of restrictions on freedom that A.R.S. § 36-789 provides detailed procedures for quarantine orders.

In sharp contrast, EO 2020-33 does not prohibit Plaintiff from leaving his residence. Plaintiff may continue to go outside to engage in or use Essential Activities, Essential Functions, and Essential Businesses. [Doc. 21-19 at ¶¶ 2-4.] Among other things, Plaintiff can engage in "outdoor exercise" or visit "health and public health operations . . . delivery and take out dining, grocery stores, pharmacies, essential retail, gas stations, hardware stores, hotels and motels, car dealers, auto mechanics, state parks, golf courses, charitable and social services, Goodwill, media, banks, credit unions, critical trades, postal services, [and] laundry services." [*Id.* at 21-19 ¶ 4(i); Doc. 27 at ¶ 31.] Plaintiff also has much more freedom to visit his family and friends than someone in quarantine. EO 2020-33 makes clear that "Essential Activities" include "[c]aring for a family member, friend, or pet in another household or residence." [Doc. 21-19 at ¶ 4(h).] Because Plaintiff is nowhere close to being under the same restrictions as someone actually in quarantine or isolation, the Arizona quarantine standards and procedures have no relevance or application to him.

### D. Plaintiff has no right to relief under 42 U.S.C. § 1983.

"Section 1983 does not create substantive rights, but rather provides the procedural mechanism for vindicating federal statutory or constitutional rights." *McNeil v. Sherwood School Dist. 88J*, 918 F.3d 700, 706 (9th Cir. 2019). Here, because Plaintiff cannot establish that Governor Ducey violated his constitutional rights, he has no right to Section 1983 relief.

### IV. Conclusion

The COVID-19 pandemic has caused enormous hardship nationwide. While Plaintiff, as a member of a society facing a public health emergency, may have borne some of this hardship, that does not give rise to any cognizable claim against Governor Ducey. The TAC should be dismissed with prejudice.

DATED this 5th day of May, 2020.

                                  SNELL & WILMER L.L.P.

By: s/ Brett W. Johnson
     Brett W. Johnson
     Colin P. Ahler
     Tracy A. Olson
     One Arizona Center
     400 E. Van Buren, Suite 1900
     Phoenix, Arizona 85004-2202

OFFICE OF ARIZONA GOVERNOR DOUGLAS A. DUCEY

By: s/ Anni L. Foster (w/permission)
     Anni L. Foster
     1700 West Washington Street
     Phoenix, Arizona 85007

*Attorneys for Defendant Douglas A. Ducey, Governor of the State of Arizona*

**CERTIFICATE OF SERVICE**

I certify that on May 5, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, which electronically sends a copy of same on to:

Joseph Martin McGhee
P.O. Box 91
Flagstaff, AZ 86002
mcghee.v.city.of.flagstaff.et.al@gmail.com
spurfy@icloud.com
*Plaintiff, in Pro Per*

Michele Molinario
Derek R. Graffious
JONES, SKELTON & HOCHULI, P.L.C.
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-1700
Fax: (602) 200-7831
mmolinario@jshfirm.com
dgraffious@jshfirm.com
Attorneys for Defendants City of Flagstaff
and Mayor Coral Evans

  s/ Tracy Hobbs