Brett W. Johnson (#021527)
Colin P. Ahler (#023879)
Tracy A. Olson (#034616)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: bwjohnson@swlaw.com
        cahler@swlaw.com
        tolson@swlaw.com

Anni L. Foster (#023643)
General Counsel
Office of Arizona Governor Douglas A. Ducey
1700 West Washington Street
Phoenix, Arizona 85007
Telephone: 602-542-4331
E-Mail: afoster@az.gov

*Attorneys for Defendant Douglas A. Ducey,
Governor of the State of Arizona*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Martin McGhee,<br><br>    Plaintiff,<br><br>v.<br><br>City of Flagstaff, et al.<br><br>    Defendants. | No. 20-CV-08081-GMS<br><br>**RESPONSE TO PLAINTIFF'S EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION**<br><br>Assigned to: Hon. G. Murray Snow<br>(Oral Argument Requested) |

**I.      Introduction**

As of May 4, 2020, the Center for Disease Control and Prevention ("CDC") reports that 67,456 Americans have died from the 2019 novel Coronavirus ("COVID-19"). By listening to medical experts and implementing physical distancing policies, Arizona has, thankfully, been able to mitigate its share of this grim statistic and has also been able to maintain sufficient medical resources and supplies. But, even with these policies, 362

Arizonans have died as of May 4, 2020 as a result of COVID-19, and these numbers continue to grow.

These sacrifices cannot be ignored in deciding the best approach towards the ongoing fight against COVID-19, which continues to pose a grave threat in Arizona, nationwide, and globally. The virus is highly contagious, fatal to many, and there is currently no vaccine. Physical distancing is the only known method to prevent an influx of COVID-19 cases and hospitals and other medical resources from being overwhelmed. Consequently, physical distancing measures remain critical to Arizona's strong and successful reopening.

Against the background of this public health crisis, Plaintiff seeks truly extraordinary relief: a preliminary injunction against the enforcement of Executive Order ("EO") 2020-33 that would effectively erase the discretion of Governor Ducey (and the medical, emergency management, and economic experts that report to him) to decide when and how to gradually and safely lift the restrictions in that modified stay-at-home directive.[1]

Plaintiff does not even attempt to justify this extraordinary relief by showing that EO 2020-33 causes any particularized harm *to him*. Instead, and in disregard of the actual text of EO 2020-33, Plaintiffs relies on vague and plainly erroneous contentions that the executive order prevents him from leaving his home. Further, while Plaintiff appears to argue that COVID-19 poses no meaningful health risk *to him*, he provides no reason why this Court should ignore the well-being of the many persons for whom COVID-19 *does* pose grave danger. Plaintiff's requested preliminary injunction should be denied, as he does not satisfy the relevant criteria for such an extraordinary remedy.

*First*, Plaintiff's claims are highly unlikely to succeed on the merits. Indeed, those claims should not even survive the pleadings stage, for the many reasons detailed in Governor Ducey's Motion to Dismiss. [Doc. 29.] One primary defect, for instance, with Plaintiff's procedural and substantive due process challenge to EO 2020-33 is that these

---

[1] Although Plaintiff asserts constitutional challenges against EO 2020-09, which temporarily restricted the operations of certain businesses, he does not seek a preliminary injunction against the enforcement of that order.

claims rely on a contention that the order supposedly takes away "the freedom to leave one's home and wander about without any specific purpose." [Doc. 25-1 at 16.] But that is simply not true. EO 2020-33 expressly authorizes someone to leave their home to engage in "Essential Activities," which include, among other things, "constitutionally protected activities" and "outdoor exercise," such as walking, running or biking. [Doc. 21-19 at ¶ 4.] EO 2020-33 also makes clear that no person, including Plaintiff, is required to provide "documentation or proof" that that they are engaged in an authorized activity outside their home. [*Id.* at ¶ 2(e).]

Moreover, even if Plaintiff could show that EO 2020-33 actually infringes on his rights to movement and travel, the Supreme Court has made clear that a state may reasonably restrict constitutional freedoms during a pandemic, and that courts will not second-guess a state's decisions during such a public health crisis. *See Jacobson v. Massachusetts*, 197 U.S. 11, 31 (1905). By using physical distancing to combat COVID-19, EO 2020-33 (which is in line with others issued throughout the country and the world) easily satisfies the deferential *Jacobson* standard. Similarly, Governor Ducey had discretion to declare a state of emergency in Arizona because the relevant statute (A.R.S. § 26-301(15)) explicitly allows such a declaration based on the existence of an "epidemic."

*Second*, by default, Plaintiff's failure to show a likelihood of success on the merits means that he cannot show irreparable harm. Plaintiff does not identify any alleged irreparable harm other than the purported violation of his constitutional rights to freedom and travel. But, as stated, EO 2020-33 contains significant protections for the exercise of those specific rights. The order also requires physical distancing, but Plaintiff has no constitutional right to put others in harm's way.

*Third*, Plaintiff cannot show that the balance of equities and the public interest favor a preliminary injunction against the enforcement of EO 2020-33. It is difficult to imagine a more important public interest in *maintaining* enforcement. Though available scientific research has been and remains sparse, the available information shows that the more COVID-19 spreads, the more death and suffering will take place. Further, without treatment

or a vaccine, the uncontrolled spread of COVID-19 threatens to overwhelm hospitals and other medical resources. As the Fifth Circuit recently stated in regard to COVID-19, a "state's interest in protecting public health during such a time is at its zenith." *In re Abbott*, 954 F.3d 772, 795 (5th Cir. 2020). At such an abnormal time, Plaintiff's supposed interest in being able to "wander about without any specific purpose," without observing physical distancing practices, must temporarily give way to public health. [Doc. 25-1 at 16.]. Plaintiff's arguments are especially negated by EO 2020-33's efforts to roll back restrictions as more data becomes available, and the State's efforts to improve healthcare capacity are implemented.

"[L]iberty interests are, and always have been, subject to society's interests—society being our fellow residents. They—our fellow residents—have an interest to remain unharmed by a highly communicable and deadly virus." *Martinko v. Whitmer*, Case No. 20-00062MM, at 10 (Mich. Ct. Cl. 2020) (rejecting request for preliminary injunction against more restrictive stay-at-home order).[2]

## II.  **Factual Background**

Governor Ducey's Motion to Dismiss and Motion for Judicial Notice both describe relevant facts to this matter and are incorporated here. [Doc. 27, 29.] As detailed in the Motion to Dismiss, this Court may dispose of Plaintiff's claims based on the allegations of his Third Amended Complaint or, alternatively, based on those allegations and judicially-noticeable facts.

Nevertheless, to provide a more complete picture regarding COVID-19 and Governor Ducey's actions in response to the virus, attached as Exhibits A through D to this Response are declarations from: Dr. Cara Christ, Director of the Arizona Department of Health Services ("ADHS") ("Exhibit A"); Major General Michael T. McGuire, Adjutant General of the Arizona National Guard and Director of the Arizona Department of Emergency and Military Affairs ("Exhibit B"); Michael Wisehart, Assistant Director of the

---

[2] The *Martinko* decision, is available at:
https://www.michigan.gov/documents/ag/20200429_Opinion_and_Order_688921_7.pdf.

- 4 -

Arizona Department of Economic Security, Division of Employment and Rehabilitation Services ("Exhibit C"); and Sandra Watson, President and CEO of the Arizona Commerce Authority ("ACA") ("Exhibit D"). These declarations more fully explain how COVID-19 poses two distinct threats to Arizonans and the governments' response to balance the health, safety, and welfare of the community.

*First*, because the virus is highly infectious and can be fatal it poses a severe threat to individual health, especially those individuals over the age of 65. [Ex. A at ¶¶ 8, 9, 22-23.] As of May 4, 2020, the Arizona Department of Health Services reports 8,919 cases and 362 deaths in Arizona. [Doc. 27 at ¶ 2.] The Navajo Nation suffered a particularly rapid outbreak of COVID-19 in the beginning of March. [Ex. B at ¶ 19.] As of May 2, 2020, the Navajo Nation alone had 2,373 cases of COVID-19 and 73 confirmed deaths. [*Id.* at ¶ 19.] What happened in the Navajo Nation could occur throughout the state unless appropriate physical distancing requirements are maintained until the COVID-19 threat has passed. [*Id.* at ¶19.]

*Second*, the virus also poses a massive strain on critical infrastructure and essential services. Specifically, COVID-19 increases the number of patients seeking medical care, draining hospitals of necessary medical equipment. [Ex. A at ¶ 24–25; Ex. B at ¶¶ 17-18.] Indeed, Arizona hospitals continuously struggle to maintain adequate supplies of personal protective equipment ("PPE") and licensed hospital and ICU beds. [Ex. A at ¶¶ 24–25; Ex. B at ¶¶ 17-18.] Without adequate medical supplies, doctors are, in some instances, forced to choose which patient to save. [Ex. A at ¶ 26.] Panic buying of groceries also threatened the state's supply of food. [Ex. B at ¶ 17.]

There are no generally available FDA approved drugs to treat COVID-19, although some drugs have been approved for emergency situations. [Ex. A at ¶ 11.] It is believed that the virus spreads primarily from person to person contact. [*Id.* at ¶ 10.] As a result, the CDC recommends that individuals stay six feet apart, avoid gatherings of over ten people, and use take-out and pick up options at restaurants. [Doc. 27 at ¶ 12, 16; Ex. A at ¶¶ 18, 19.] In short, physical distancing measures are integral to slow the spread of COVID-19. [Ex. A at

¶¶ 17, 18, 28, 33.] Slowing the spread is necessary to ensure the continued supply of critical health care goods and food during the COVID-19 emergency. [*Id.* at ¶¶ 28, 33; Ex. B at ¶ 22.]

Against this backdrop, on March 11, 2020 Governor Ducey issued a Declaration of Emergency for Arizona, specifically in response to the COVID-19 pandemic. [Doc. 21 at 8 ¶ 6; Doc. 21-13 at 1.] This emergency declaration has been followed by several executive orders and other administrative actions.

The State has begun increasing health care capacity by expanding treatment areas in existing medical facilities, re-opening closed facilities, utilizing Federal Medical Stations (FMS) and other health resources from the Federal Emergency Management Agency (FEMA) and the U.S. Department of Health and Human Services, and identifying alternative areas of treatment. [Ex. A at ¶ 25; Ex. B at ¶ 18.] Although lifted, Governor Ducey also issued Executive Order 2020-10, which limited elective surgeries to ensure availability of medical supplies. [Ex. A at ¶ 25.] Governor Ducey has also mobilized the National Guard to help coordinate food supplies in the state. [Ex. B at ¶ 17.] The National Guard has subsequently been used to coordinate state responses to COVID-19 outbreaks, like one that recently occurred in the Navajo Nation. [*Id.* at ¶ 19.]

The Governor issued EO 2020-12, to ensure that all essential businesses remained open in some respect during the state's response to COVID-19 and allow people to continue on with their lives to the greatest extent possible. [Ex. D at ¶¶ 8–9; Doc. 27-1 at 108 ¶ 1.] Essential businesses are those that promote the public health, safety and welfare of the state, or assist others in fulfilling such essential functions. [Doc. 27-1 at 110-113 ¶ 3(e).] Several of the identified "essential businesses" were specifically included to assist in economic recovery once the state of emergency expired. [Ex. D at ¶ 9.]

Governor Ducey also directed the implementation of physical distancing policies. For instance, EO 2020-09 mandated, among other things, that "all restaurants in counties of the State with confirmed cases of COVID-19 shall close access to on-site dining until further notice. Restaurants may continue serving the public through pick up, delivery, and

1  drive-thru operations." [Doc. 21 at 8 ¶ 8; Doc. 21-16 at ¶ 2.] Later, Governor Ducey issued EO 2020-18, which implemented the original stay-at-home directive. [Doc. 21 at 8 ¶ 10; Doc. 21-18 at ¶ 2.] On April 30, Governor Ducey issued EO 2020-33, which extended EO 2020-18, but lifted some of its restrictions. [Doc. 21 at 9 ¶ 11.]

EO 2020-33 generally declares that all Arizonans "shall limit their time away from their place of residency." [Doc. 21-19 at ¶ 2.] However, EO 2020-33 outlines numerous exceptions to this limitation. [Doc. 21-19 at ¶¶ 2, 3-4, 8-9.] For example, an individual may leave their property to participate in "essential activities" and "essential functions" as defined in the order; to utilize any services or product provided by "essential business;" and for certain types of employment. [*Id.* ¶ 2.] Importantly, "essential activities" includes engaging in "constitutionally protected activities such as speech and religion" and engaging in "outdoor exercise activities, such as walking, hiking, running, biking or golfing, but only if appropriate physical distancing practices are used." [*Id.* ¶¶ 4(i), (k).] The order also allows individuals to visit certain non-essential retail businesses. [*Id.* ¶ 12.]

EO 2020-33 has relaxed enforcement mechanisms: "[n]o person shall be required to provide documentation or proof of their activities to justify their activities under this order" and "[p]rior to any enforcement action being taken to enforce this order . . . a person shall be notified and given an opportunity to comply." [*Id.* ¶¶ 2(e), 14.] The order is scheduled to expire on May 15, 2020 at 11:59 p.m., unless modified, extended, or rescinded. [*Id.* ¶ 17.]

Governor Ducey's actions have slowed the spread of COVID-19 in Arizona, which has significantly reduced the strain on the healthcare industry and critical supply chains. [Ex. A at ¶¶ 26, 28; Ex. B at ¶¶ 20, 22.] In fact, Arizona has significantly increased its capacity and resources since the start of the emergency. [Ex. A at ¶ 26.] Further, EO 2020-33 allows certain non-essential retail businesses to begin reopening, in part because of the "efforts taken to increase capacity in our hospitals and intensive care units." [Doc. 21-19 at 2, ¶ 12.] If these restrictions are prematurely lifted, COVID-19 cases will likely rise, placing renewed pressures on the health care system, and increase the threat to the health and safety of all Arizonans. [Ex. A at ¶ 33.]

In conjunction with federal agencies, Governor Ducey has provided individuals impacted by the virus access to resources for economic support. Namely, EO 2020-11 modified unemployment benefit eligibility to include individuals whose work was impacted by COVID-19. [Doc. 27-1 at 104 ¶¶ 1-2; Ex. C at ¶10.] In addition, the federal government has passed a $2 trillion relief package which includes $600 in additional unemployment benefits available to Arizona citizens. [Ex. C at ¶ 8.] To help respond to increased number of unemployment claims, the Department of Economic Security expanded its hours of operations and provided enhanced tools for individuals to access benefits. [*Id.* at ¶ 11.] It has also instituted several initiatives designed to help individuals find employment and obtain training. [*Id.* at ¶ 12.] Further, two rounds of the federal CARES Act allocated $659 billion for small businesses, with over $8.5 billion already approved for over 63,000 small businesses in Arizona. [*Id.* at ¶ 11.][3]

## II. **Argument**

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quotation omitted); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter,* 555 U.S. at 20. "A preliminary injunction may also be appropriate if a movant raises 'serious questions going to the merits' and the 'balance of hardships . . . tips sharply towards' it, as long as the second and third

---

[3] The federal CARES Act allows small businesses to apply for certain loans designed to help pay payroll costs. [Ex. D at ¶ 12.] In addition, the U.S. Small Business Administration ("SBA") approved an Economic Injury Disaster Loan declaration for Arizona, opening up more funding opportunities. [*Id.* at ¶ 13.] The ACA helps individuals navigate these sources of funding. [*Id.* at ¶¶ 15-16.]

- 8 -

*Winter* factors are satisfied." *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). Plaintiff fails to satisfy his high burden here.

### A.  Plaintiff is Highly Unlikely to Succeed on the Merits.

Plaintiff discusses four separate claims in his preliminary injunction motion: (1) a procedural due challenge to EO 2020-33; (2) a substantive due process challenge to EO 2020-33; (3) a statutory argument that Governor Ducey could not issue EO 2020-33 without following Arizona statutes on quarantine standards and procedures; and (4) a statutory argument that COVID-19 does not cause "extreme peril to the safety of persons" within the meaning of A.R.S. § 26-301(15), which defines the circumstances in which the Governor can declare state of emergency. [*See* Doc. 25-1 at 6-19.][4]

Plaintiff cannot show that he is likely to succeed on any of these claims or, alternatively, that he has raised serious questions going to the merits. *None* of his claims state a plausible claim for relief, as detailed in Governor Ducey's Motion to Dismiss. [Doc. 29.] Further, even if Plaintiff's claims raised any factual questions, the attached declarations further demonstrate why those claims will fail. Rather than duplicating the same arguments from the Motion to Dismiss, below is a summary of the many defects with Plaintiff's claims.

### 1.  The Procedural Due Process Challenge to EO 2020-33 Fails.

Plaintiff's procedural due process claim against EO 2020-33 suffers from three independent defects. [S*ee* Doc. 29 at 11-15.] *First*, EO 2020-33 is a quasi-legislative action, broadly requiring that "*all* individuals in the state of Arizona shall limit their time away from their place of residence," subject to various exceptions. [*See* Doc. 21-19 ¶¶ 2, 6 (emphasis added).] Due process rights only attach to adjudicatory processes that "exceptionally affect" a "relatively small number of persons," not quasi-legislative processes in which "all are equally concerned." *Blocktree Props. LLC v. Pub. Util. Dist.*

---

[4] Because Plaintiff's motion does not seek a preliminary injunction against EO 2020-09 (which restricts the operations of certain non-essential businesses) and does not address the merits of his constitutional challenges to that order, this Response does not address the claims related to EO 2020-09, either. The Motion to Dismiss does explain, however, why those claims should be dismissed. [*See* Doc. 29 at 8-11.]

1  *No. 2*, 380 F. Supp. 3d 1102, 1121 (E.D. Wash. 2019) (citing *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445-46 (1915))).

*Second*, Plaintiff cannot allege the requisite deprivation of a constitutionally protected liberty interest. *See Brewster v. Board of Educ. of Lynwood Unified School Dist.*, 149 F.3d 971, 982 (9th Cir. 1998) (stating elements of procedural due process claim). Rather than depriving Plaintiff of freedom of movement or travel, EO 2020-33 explicitly *exempts* "constitutionally protected activities" and "outdoor exercise" from its coverage. [Doc. 21-19 at ¶ 4(k)]; *see also* Ariz. Att'y Gen. Op. No. I20-008, at 1-3 (Apr. 30, 2020) (concluding that phrase "to the extent feasible" in predecessor order to EO 2020-33 means that the order "does not impose an absolute six-foot social distancing requirement on essential activities that are constitutionally protected."). Plaintiff does not have any protected right to travel in whatever manner he feels fit, particularly when doing so could place others at risk of catching a deadly virus. *See Miller v. Reed*, 176 F.3d 1202, 1205 (9th Cir. 1999) ("[B]urdens on a single mode of transportation do not implicate the right to interstate travel."); *Prince v. Massachusetts*, 321 U.S. 158, 166-67 (1944) ("The right to practice religion freely does not include liberty to expose the community … to communicable disease.").

*Third,* the Supreme Court has recognized that "a state may implement emergency measures that curtail constitutional rights so long as the measures [1] have at least some 'real or substantial relation' to the public health crisis and [2] are not 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law.'" *Abbott*, 954 F.3d at 784-85 (quoting *Jacobson,* 197 U.S at 31) (emphasis added). EO 2020-33 has a real and substantial relation to the ongoing COVID-19 crisis because it follows federal guidance on limiting person-to-person contact through physical distancing, while still allowing a substantial amount of freedom. Indeed, the order is consistent with actions taken by other states in response to COVID-19. *See Abbott*, 954 F.3d at 787. Further, EO 2020-33 does not plainly or palpably invade Plaintiff's right to movement or travel. Plaintiff may continue to exercise these rights under the exceptions for essential activities, businesses, and functions. [Doc. 21-19 at ¶¶ 2(a), 4(i), 4(k).]

**2.     The Substantive Due Process Challenge to EO 2020-33 Fails.**

Just as EO 2020-33 does not *deprive* a protected liberty interest (as required for a procedural due process claim), neither does this order *infringe* on any fundamental right. The order's various exceptions for "Essential Activities" protect the freedoms to movement and travel. [Doc. 21-19 at ¶ 4(k).] In addition, Governor Ducey has taken strides to only issue narrow orders that are combined with economic offset efforts to assist individuals and businesses in weathering this crisis. [Ex. C. at ¶¶9-12; Ex. D at ¶¶ 7, 9, 16.] Because no fundamental right is infringed, rational basis review applies to Plaintiff's substantive due process claim. *See Dittman v. California*, 191 F. 3d 1020, 1031 (9th Cir. 1999). Alternatively, even if EO 2020-33 did somehow infringe on a fundamental right, *Jacobson* review applies. *See Abbott*, 954 F.3d at 777-78 (applying *Jacobson* framework to constitutional challenge to executive order by Texas Governor relating to COVID-19).

EO 2020-33 easily passes rational basis or *Jacobson* review given that physical distancing helps prevent people from gathering in close proximity (within 6 feet), which is how COVID-19 spreads. [Doc. 27 at ¶ 12.] As discussed in the Motion to Dismiss, the Court can decide this issue in Governor Ducey's favor based on the Plaintiff's own allegations and judicially-noticeable facts. [*See* Doc. 29 at 15-16.] However, to the extent necessary to decide Plaintiffs' request for a preliminary injunction, the attached declarations of Dr. Christ and Major General McGuire provide additional support for the genuine relationship between EO 2020-33 and the COVID-19 crisis. [Ex. A at ¶¶ 17, 20, 28, 29; Ex. B at ¶¶ 19–22.] For instance, Dr. Christ states that, in her medical opinion, EO 2020-33 and other physical distancing measures are "critical to continue to slow the spread and impact of COVID-19." [Ex. A at ¶ 28.] Indeed, for this reason, Dr. Christ recommended that the Governor issue EO 2020-33. [*Id.* at ¶ 20.]

**3.     Plaintiff's statutory challenge to EO 2020-33 fails.**

Plaintiff contends that EO 2020-33 places him under quarantine and, thus, could not be issued without following the specific Arizona quarantine statutes. In reality, Arizona law makes clear that someone in quarantine or isolation is strictly prohibited from leaving "the

isolation or quarantine premises." A.R.S. § 36-788(D). Further, with very limited exceptions, someone in quarantine or isolation cannot receive visitors at the "isolation or quarantine premises," including family or friends. A.R.S. § 36-788(D), (E). Because EO 2020-33 does not come close to placing these types of restrictions on Plaintiff, who remains free to travel outside his home and visit family and friends as outlined in the order, the Arizona quarantine standards and procedures have no relevance to him. [*See* Doc. 29 at 16-17; Ex. A at ¶ 21; Ex. B at ¶ 16.]

### 4. Plaintiff's Statutory Challenge to Governor Ducey's State of Emergency Declaration Fails.

Plaintiff also appears to attack the validity of EO 2020-33 by suggesting that Governor Ducey had no authority to declare a state of emergency in advance of that order. [See Doc. 25-1 at 18-19.] This argument, based on the implausible notion that COVID-19 does not cause "extreme peril" to persons, is highly unlikely to succeed on the merits.

In relevant part, A.R.S. § 26-301(15) defines a "[s]tate of emergency" as "the duly proclaimed existence of conditions of disaster or of extreme peril to the safety of persons or property within the state caused by air pollution, fire, flood or floodwater, storm, *epidemic*, riot, earthquake or other cause." (emphasis added).[5] The specific reference to "epidemic" in this statute authorized Governor Ducey's emergency declaration regarding COVID-19. [*See* Doc. 21 at 1 (admission by Plaintiff that "**COVID-19 is A Pandemic**."); *see also* Doc. 29 at 5-7 (discussing various admissions by Plaintiff and judicially noticeable facts regarding COVID-19 that also establish "extreme peril").][6]

### B. Plaintiff Cannot Show a Likelihood of Irreparable Harm.

Plaintiff also fails to show that keeping EO 2020-33 in place will cause him irreparable harm. The general rule that an alleged constitutional infringement meets the

---

[5] Plaintiff does not address the "conditions of disaster" piece of this statute.

[6] By definition, "[a] pandemic is a kind of epidemic; one which has spread across a wider geographic range than an epidemic, and which has affected a significant portion of the population." *Pandemic*, Merriam-Webster, https://www.merriam-webster.com/dictionary/pandemic (last visited May 5, 2020).

1   irreparable harm requirement is only applicable in cases where the plaintiff shows a
2   likelihood of success on the merits. *See, e.g.*, *Rendish v. City of Tacoma*, 123 F.3d 1216,
3   1226 (9th Cir. 1997) ("Because the district court's assessment that Rendish did not show a
4   likelihood of success was accurate, it did not abuse its discretion in finding no irreparable
5   harm based on a loss of her constitutional rights.").

6         Here, Plaintiff does not identify any irreparable harm from EO 2020-33 aside from an alleged violation of his rights to free movement and travel. [*See* Doc. 25-1 at 15, 20.] But, for the reasons stated above and in Governor Ducey's Motion to Dismiss, Plaintiff cannot show that EO 2020-33 actually prevents him from exercising those rights. Indeed, Plaintiff does not and cannot identify any protected activity that he would like to engage in that is prohibited by the EO. In short, any threatened injury to Plaintiff's right to movement or transit is entirely speculative and cannot constitute irreparable harm.[7] *See Colo. River Indian Tribes v. Town of Parker*, 776 F.2d 846, 849-50 (9th Cir. 1985) ("Because the injury being claimed by Parker is based upon nothing more than mere theoretical harm to its liquor retailers, we cannot conclude the possibility of injury to the Town is irreparable.").

16        Moreover, Plaintiff's claim that irreparable injury may be "presumed" based solely on an allegation that his rights *may* be violated is incorrect. Presumptions of irreparable harm are inconsistent with *Winter*, where the Supreme Court held that a mere "possibility" of irreparable injury is insufficient to warrant an injunction. *See Winter*, 555 U.S. at 22; *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011) ("We conclude that presuming irreparable harm in a copyright infringement case is inconsistent with, and disapproved by, the Supreme Court's opinions in *eBay* and *Winter*.").

23        **C.**    <u>**The Public Interest Tips Sharply in Favor of Upholding EO 2020-33.**</u>

24        Plaintiff also cannot establish that the third and fourth *Winter* factors support the grant of his requested preliminary injunction. When a government entity is a party to a

---

[7] Although Ninth Circuit precedent holds that enforcement of an unconstitutionally statute may be enjoined, these cases are inapplicable given that EO 2020-33 is constitutional and explicitly exempts "constitutionally protected activities" from its prohibitions. *See Cuviello v. City of Vallejo*, 944 F.3d 816, 832-33 (9th Cir. 2019).

lawsuit, it is appropriate to "consider the balance of equities and the public interest together." *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018).[8]

Here, the balance of equities involves: (1) on one hand, Plaintiff's supposed interest in "leav[ing] [his] home and wander[ing] about without any specific purpose," without following physical distancing protocols, [Doc. 25-1 at 16]; and (2) on the other hand, the public interest in preventing death and serious physical illnesses, and maintaining an appropriate and safe supply of hospital beds, ventilators, PPE, and other medical resources and equipment. [Ex. A at ¶¶ 8-10, 22-26; Ex. B at ¶¶ 17-19, 20, 22.] These necessary restrictions are tempered by the narrowed nature of the executive orders and the significant economic support provided by the government to minimize real hardships. [Ex. C at ¶¶ 8, 10, 11-12; Ex. D at ¶¶ 11-14.] The referenced public interests are far more significant than anything that Plaintiff has alleged or could show.

"[A] community has the right to protect itself against an epidemic of disease which threatens the safety of its members . . . ." *Jacobson*, 197 U.S. at 27. Thus, when faced with a public health crisis like COVID-19, the public interest in state action "is at its zenith." *Abbott*, 954 F.3d at 795. "In the unprecedented circumstances now facing our society, even a minor delay in fully implementing the state's emergency measures could have major ramifications . . . ." *Id.*

Indeed, Plaintiff alleges that the overall COVID-19 mortality rate across all age groups may be as high as 1.6% and for older segments of the population may be as high as 18%. [Doc. 21 at 5.] Further, if the spread of COVID-19 is not mitigated, the state could run out of PPE, hospital and ICU beds, and potentially, food. [Ex. A at ¶¶ 24-25, 28; Ex. B

---

[8] Plaintiff argues the balance of the equities tips in his favor because Governor Ducey will not be personally liable for claims relating to EO 2020-33. [Doc. 25-1 at 21.] This argument misses the point of the relevant inquiry, which focuses on the *public* interest, not Governor Ducey's personal liability.

at ¶¶ 17-18; 22.] Physical distancing measures, like those contained in EO 2020-33, are critical to preventing potentially catastrophic results. [Ex. A at ¶¶ 28, 33; Ex. B at ¶ 22.]

Based in part on the unassailable public interest in preventing the spread of a deadly disease, several courts have recently determined that it would be improper to enjoin the enforcement of various state executive orders related to COVID-19. In *Abbott*, for example, the Fifth Circuit issued a writ of mandamus that vacated a temporary restraining order concerning a Texas executive order that postponed non-essential surgeries and medical procedures, including certain abortions. *Abbott*, 954 F.3d at 777-78. The court explicitly declined to second-guess the Texas Governor's decision-making on how to best conserve medical resources, and noted: "It is hard to imagine a more urgent situation." *Id.* at 795.

In *Friends of DeVito v. Wolf*, --- A.3d ----, 2020 WL 1847100, at *1, *3 (Pa. 2020), the Pennsylvania Supreme Court rejected various statutory and constitutional claims against an executive order that temporarily closed various "non-life-sustaining" businesses and that prohibited dine-in restaurant services. Among other things, the court noted the potentially "staggering death toll" that could occur absent physical distancing. *Id.* at *13. The court also reasoned that when "[f]aced with protecting the health and lives of 12.8 million Pennsylvania citizens" the state's closure of certain businesses was not "not **unduly oppressive**." *Id.* at *14.

In addition, in *Martinko*, Case No. 20-00062MM, at 1-2, 7, the Michigan Court of Claims considered procedural and substantive due process challenges to an executive order that similarly imposed a stay-at-home directive, subject to exceptions for essential activities.[9] In denying plaintiffs' request for a preliminary injunction, the court not only discussed how those claims were unlikely to succeed under the *Jacobson* standard, but also reasoned: "the difficulties of living under the restrictions of [a stay-at-home order] is

---

[9] Notably, unlike EO 2020-33, the Michigan stay-at-home order does not contain a specific exemption for all constitutionally protected activities. The Michigan order is available at: https://www.michigan.gov/documents/whitmer/EO_2020-59_Signed_688350_7.pdf.

temporary, while to those who contract the virus and cannot recover (and to their family members and friends), it is all too permanent." *Id.* at 12-14, 17.

Plaintiff nevertheless contends that "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." [Doc. 25-1 at 21 (quoting *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 105 (D.D.C. 2012).] But Plaintiff cannot show an actual constitutional violation. In any event, individual liberties do not always trump the public's interest in health and well-being, particularly during a public health emergency. *See Jacobson*, 197 U.S. at 29; *see also Abbott*, 954 F.3d at 791-92 (rejecting the notion that "all injunctions vindicating constitutional rights serve the public interest," and a court must "at the very least weigh the potential injury to the public health when it considers enjoining state officers from enforcing emergency public health laws.").

Here, Plaintiff provides no basis for elevating his personal interests above the health of the community at large. His requested preliminary injunction should be denied.

### D. **Plaintiff's Request for an Injunction Against Future Executive Orders Should be Rejected.**

Plaintiff also asks this Court to enjoin the Defendant from "issuing any future Executive Order which is a quarantine or a *per se* quarantine" as set forth under Arizona law. [Doc. 25-1 at 22.] This request should be denied. To start, EO 2020-33 does not resemble a "quarantine or per se quarantine," as discussed above and in Governor Ducey's Motion to Dismiss. [Doc. 29 at 16-17; *see also* Ex. A at ¶ 21; Ex. B at ¶ 16.] Moreover, injunctions "must be tailored to remedy the specific harm alleged" by the plaintiff. *E.g.*, *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (quoting *Lamb-Weston Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991)). It is impossible to tailor an injunction to prevent currently nonexistent harms that will theoretically arise from yet-to-be-issued governmental orders. *See Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir. 1987) ("Broad language in an injunction that essentially requires a party to obey the law in the future is not encouraged and may be struck from an order for injunctive relief . . . .").

## IV. Conclusion

Governor Ducey is cognizant of the impact of EO 2020-33 on Arizonans. In exercising his constitutional and statutory powers, he ensured that constitutional rights were protected and that economic interests were considered. EO 2020-33's rational restrictions are based on expert data and guidance, including from the federal government. Further, EO 2020-33 is in line with actions taken by other states and countries to limit the devastating impact of COVID-19. Plaintiff has not, and cannot, show that EO 2020-33 violates the constitution or any other law. The public interest is overwhelming in favor of the order's continuation. Accordingly, Plaintiff's motion should be denied.

DATED this 5th day of May, 2020.

SNELL & WILMER L.L.P.

By: s/ Brett W. Johnson
Brett W. Johnson
Colin P. Ahler
Tracy A. Olson
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202

Anni L. Foster
OFFICE OF ARIZONA GOVERNOR
DOUGLAS A. DUCEY
1700 West Washington Street
Phoenix, Arizona 85007

*Attorneys for Defendant Douglas A. Ducey, Governor of the State of Arizona*

**CERTIFICATE OF SERVICE**

I certify that on May 5, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, which electronically sends a copy of same on to:

Joseph Martin McGhee
P.O. Box 91
Flagstaff, AZ 86002
mcghee.v.city.of.flagstaff.et.al@gmail.com
spurfy@icloud.com
*Plaintiff, in Pro Per*

Michele Molinario
Derek R. Graffious
JONES, SKELTON & HOCHULI, P.L.C.
40 North Central Avenue, Suite 2700
Phoenix, Arizona 85004
Telephone: (602) 263-1700
Fax: (602) 200-7831
mmolinario@jshfirm.com
dgraffious@jshfirm.com
Attorneys for Defendants City of Flagstaff
and Mayor Coral Evans

 s/  Tracy Hobbs