**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Martin McGhee, | No. CV-20-08081-PCT-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| City of Flagstaff, et al., | |
| Defendants. | |

Before the Court are (1) Plaintiff Joseph McGhee ("Plaintiff")'s Motion for Leave to File Excess Pages for Motion for Temporary Restraining Order and Preliminary Injunction, (Doc. 23); (2) Plaintiff's Motion for Leave to File Excess Pages for Memorandum of Law in Support of Third Amended Complaint, (Doc. 24); and (3) Plaintiff's Amended Emergency Motion for Temporary Restraining Order and Preliminary Injunction, (Doc. 22).

Good cause appearing, Plaintiff's dual Motions for Leave to File Excess Pages are granted. The Court held a hearing on Friday, May 8, 2020 regarding Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction. After considering the parties' arguments and briefing, Plaintiff's Motion is denied.

## BACKGROUND

Arizonans, like all Americans and much of the world, are now familiar with the Coronavirus ("COVID-19") pandemic.[1] The seriousness of the COVID-19 outbreak came

---

[1] *See* the Court's Order, Doc. 41, for facts the Court has taken judicial notice of in this

to the attention of many on January 30, 2020 when the United Nations World Health Organization ("WHO") declared the effects of the outbreak a public health emergency. The next day the United States Department of Health and Human Services ("HHS") declared the same. The outbreak was officially classified as a pandemic by the WHO on March 11, 2020. Later that same day, Governor Ducey issued a Declaration of Emergency in Arizona citing the WHO and HHS declaration. Just days later, President Trump declared a national emergency and Plaintiff's Mayor, Defendant Carol Evans, declared a state of local emergency in Flagstaff, Arizona.

According to the Center for Disease Control ("CDC"), the virus is primarily spread from person to person such that a person can become infected by coming into close contact (within 6 feet) with a person who has COVID-19. The CDC has also reported that a person may be infected with COVID-19 but not show any symptoms. Because there is not yet a vaccine, the only known method to slow the spread of the virus is to maintain physical distance from others. Accordingly, the CDC and President Trump issued guidance recommending that individuals avoid social gatherings of more than 10 people.

In an attempt to mitigate the spread of COVID-19, Governor Ducey and Mayor Evans issued various executive orders and proclamations. Mayor Evans issued a proclamation on March 15, 2020 mandating that all Flagstaff restaurants, bars, theaters, gyms, and other like businesses close to the public.[2] The proclamation, however, encouraged restaurants to offer curb-side or delivery services and exempted several businesses such as grocery stores, pharmacies, and food banks from the directive. Shortly thereafter, Governor Ducey issued Executive Order 2020-09, which similarly mandated that "all restaurants in counties of the State with confirmed cases of COVID-19 shall close access to on-site dining until further notice. Restaurants may continue serving the public through pick up, delivery, and drive-thru operations." (Doc. 21-16 at 2.) On March 30,

---

action.

[2] This proclamation was later amended to include salons among the list of businesses that must close to the public and extended the time in which the proclamation would be in effect.

2020, Governor Ducey issued Executive Order 2020-18 ("EO 2020-18"), which implemented a "Stay Home, Stay Healthy, Stay Connected" policy under which "all individuals in the State of Arizona shall limit their time away from their place of residence or property." (Doc 21-18 at 1.) This directive, however, is subject to various exceptions, such as: "caring for a family member, friend or pet in another household"; "engaging in outdoor exercise activities . . . if appropriate physical distancing practices are used . . ."; "attending or conducting work"' and "engaging in constitutionally protected activities such as speech and religion . . . provided that such is conducted in manner that provides appropriate physical distancing to the extent possible." (Doc. 21-18 at 3.) Notably, "[n]o person shall be required to provide documentation or proof of their activities to justify their activities under this order." (*Id.* at 2.) EO 2020-18 was made effective through April 30, 2020.

On April 29, 2020, Governor Ducey issued Executive Order 2020-33 ("EO 2020-33) which amended the "Stay Home, Stay Healthy, Stay Connected" order to be in effect until May 15, 2020. EO 2020-33 maintained the same exceptions provided in EO 2020-18 and expanded Arizonans; ability to visit retail businesses. (*See generally* Doc 21-19.) On May 4, 2020, Governor Ducey issued Executive Order 2020-34 modifying EO 2020-09 and permitting restaurants to resume dine-in services under certain conditions. (Doc. 27 at 9.)

Plaintiff, a former restaurant employee from Flagstaff, Arizona, brings this action challenging the validity of various state and local government actions taken in response to COVID-19. Specifically, Plaintiff argues that EO 2020-09, EO 2020-18, EO 2020-33, and Mayor Evans' Proclamations violate his procedural and substantive due process rights and were not permitted by relevant Arizona statutes. On April 27, 2020 Plaintiff filed an *Ex Parte* Emergency Motion for Temporary Restraining Order Without Notice and Preliminary Injunction seeking to enjoin the enforcement of EO 2020-09 and EO 2020-18. (Doc. 15.) The Court directed Defendants Ducey and Evans to file notices indicating if they received service of Plaintiff's Motion. (Doc. 17.) Upon receipt of such notice, the

Court issued an expedited briefing schedule giving Defendants an opportunity to respond to Plaintiff's Emergency Motion for Temporary Restraining Order Without Notice and Preliminary Injunction and giving Plaintiff an opportunity to reply. (Doc. 20.) On the same day the briefing schedule was issued, Plaintiff filed an "Amended Complaint Three," ("TAC") (Doc. 21), and an "Amended Ex Parte Emergency Motion for Temporary Restraining Order and Preliminary Injunction," ("Amended Motion") (Doc. 22). The Amended Motion seeks to enjoin enforcement only of EO 2020-33 and the issuance of any subsequent executive order. Governor Ducey's response, in which Mayor Evans joins, addresses the Amended Motion and TAC.

**I.     Preliminary Injunction**

Plaintiff requests a preliminary injunction enjoining enforcement of Governor Ducey's Executive Order #2020-33 ("EO 2020-33") and enjoining Governor Ducey from "issuing any future Executive Order which is a quarantine or a per se quarantine excepting under the conditions as set forth under A.R.S. §§ 36-787, 36-788, and 36-789." (Doc. 22-1 at 21.) "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). "A preliminary injunction may also be appropriate if a movant raises 'serious questions going to the merits' and the 'balance of hardships . . . tips sharply towards' it, as long as the second and third *Winter* factors are satisfied." *Disney Enterprises, Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

**A.     Likelihood of Success on the Merits**

In support of his request for a preliminary injunction, Plaintiff claims EO 2020-33 violates his procedural and substantive due process rights and Arizona statutes concerning quarantine procedure. Plaintiff also argues that Ducey's declaration of a state of emergency was not supported by Arizona law. Plaintiff must show that he is likely to succeed on these claims or at least raise serious questions going to their merits to proceed in the preliminary

injunction analysis. For the following reasons, the Court finds Plaintiff has not met this burden.

**1. Governor Ducey did not violate Arizona's quarantine procedure.**

Plaintiff contends that EO 2020-33 places him under quarantine and thus could not be issued without following the procedures set forth in Arizona's quarantine statutes, A.R.S. §§ 36-788, 36-789. EO 2020-33, however, does not place Plaintiff or anyone else under "quarantine." Under A.R.S. § 36-788, a person in quarantine is strictly prohibited from leaving the quarantine premises and, except for very narrow exceptions, cannot receive visitors. A.R.S. § 36-788(D), (E). Even by Plaintiff's own definition, "a quarantined individual is not free to engage in daily activities or to leave a place, perhaps except under a narrow set of circumstances." (Doc 22-1 at 8.) As outlined in EO 2020-33 and discussed throughout this order, EO 2020-33 does not prevent any person from engaging in activities, leaving their homes, or visiting friends or family. Because EO 2020-33 does not impose a quarantine as defined under the applicable statues, the statutes do not apply. Thus, Plaintiff has not raised serious questions as to the merits of this claim, let alone established he is likely to succeed.

**2. Governor Ducey's declaration of a state of emergency did not violate A.R.S. § 26-303.**

It is not disputed that EO 2020-33 was issued pursuant to A.R.S. § 26-303(E), which bestows the governor, after a state of emergency is declared, with "the right to exercise . . . all police power vested in the state by the constitution and laws of this state." Plaintiff, therefore, challenges the validity of EO 2020-33 by asserting that Governor Ducey had no authority to declare a state of emergency under A.R.S. § 26-303.

Under Arizona law, the governor may declare a state of emergency if there is "the duly proclaimed existence of conditions of disaster or of extreme peril to the safety of persons or property within the state caused by air pollution, fire, flood or floodwater, storm, epidemic, riot, earthquake or other causes." A.R.S. § 26-303(D); A.R.S. § 26-301(15). Because the term "extreme peril" is not defined in the statute, Plaintiff offers Merriam-Webster Dictionary definitions of the two words and contends that it means "exposure to

the risk of death destruction or loss, existing in a very high degree." (Doc. 22-1 at 17.) Applying this definition, Plaintiff claims that under one possible version of still-developing facts "an infectious disease, where the overwhelming majority of those who are infected – by some estimates more than 99.88% in one-hundred – will recover without any medical intervention, cannot reasonably be characterized as a condition of 'extreme peril.'" *Id.* at 18.

However, A.R.S. § 26-303(D) gives the governor the authority "to find" the requisite circumstances exist. The Supreme Court has "disclaimed any judicial power to second-guess the state's policy choices in crafting emergency public health measures." *In re Abbott*, 954 F.3d 772, 784 (5th Cir. 2020) (citing *Jacobson v. Massachusetts*, 197 U.S. 11, 28 (1905)). The *Jacobson* court reasoned, "Smallpox being prevalent and increasing at Cambridge, the court would usurp the functions of another branch of government if it adjudged, as matter of law, that the mode adopted under the sanction of the state[, a mandatory vaccine], to protect the people at large was arbitrary, and not justified by the necessities of the case." *Jacobson*, 197 U.S. at 28. The circumstances before the Court are no different. COVID-19 was present and rising in Arizona, and had been identified as a public health emergency by both the WHO and HHS. the Court simply does not possess the authority to second-guess Governor Ducey's decision to declare a state of emergency, in accordance with Arizona law, where there was some evidence, upon which he relied[3], to support the existence of a public health emergency.

Of course the governor's power "to declare an emergency and thus eliminate the constraints of the due process clause is not without bounds." *Sinaloa Lake Owners Ass'n v. Tudor*, 882 F.2d 1398, 1406 (9th Cir.1989), overruled on other grounds by *Armendariz v. Penman*, 75 F.3d 1311, 1324 (9th Cir.1996). However, to evade the deferential review given to emergency decisions, a plaintiff must show "the [state] official[] kn[e]w no emergency exist[ed], or [acted] with reckless disregard of the actual circumstances." *Id.* In

---

[3] Governor Ducey's Declaration of Emergency regarding COVID-19 cites the WHO and HHS declarations of public health emergencies and the WHO's official declaration of a pandemic due to COVID-19. (Doc. 21-13 at 1.)

light of the multiple publications declaring COVID-19 a public health emergency, and Plaintiff's own admission that COVID-19 is highly contagious and present in all 50 states, Plaintiff has not and is not likely able to make this showing. As a result, Plaintiff will not likely succeed on the merits of this claim. Nor does the Court find that Plaintiff has raised serious questions as to its merits.

### 3. EO 2020-33 did not violate Plaintiff's procedural due process rights.

The Fourteenth Amendment to the United States Constitution prohibits the deprivation of "life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1. Thus, "[a] procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). Plaintiff asserts that EO 2020-33 deprives him of his fundamental rights to travel[4] and movement without notice or a hearing as required by due process. *See Kent v. Dulles*, 357 U.S. 116, 125 (1958) ("The right to travel is a part of the 'liberty' of which the citizen cannot be deprived without the due process of law under the Fifth Amendment . . ."); *Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 944 (9th Cir. 1997) ("Citizens have a fundamental right of free movement."); *see also Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (noting that due process generally requires some kind of notice or hearing before a state may deprive a person of liberty) (citing *Goss v. Lopez*, 419 U.S. 565, 579 (1975)).

Plaintiff's only claim that EO 2020-33 infringes his right to travel and movement is that it prohibits an individual from "wander[ing] about without any specific purpose." (Doc. 36 at 8.) As an initial matter, EO 2020-33 does not prohibit any person from leaving their home. EO 2020-33 explicitly exempts, among other things, "constitutionally protected activities" and "outdoor exercise activities, such as walking" from its coverage.

---

[4] Plaintiff does not assert that EO 2020-33 restricts his right to interstate travel but focuses his objection on his alleged inability to wander about without any specific purpose.

- 7 -

(Doc. 21-19 at 4.) Moreover, EO 2020-33 explicitly states that persons will not be required to provide proof to justify their activities. (Doc 21-19 at 3.) Thus, contrary to Plaintiff's assertion, he or anyone else, may, in many circumstances, leave their home and wander about, in compliance with physical distancing guidelines, without risk of violating the order.

However, to the extent there are some exercises of Plaintiff's right to movement that are curtailed by EO 2020-33, A.R.S. 26-303(E) [5] gives Governor Ducey the authority to impose such restrictions. As established above, during a state of emergency A.R.S. § 26-303(E) gives the governor "the right to exercise . . . all police power vested in the state by the constitution and laws of this state." The police power undeniably includes the authority to effectuate rules to protect public health and safety. *See Watson v. Maryland*, 218 U.S. 173, 176 (1910) ("It is too well settled to require discussion . . . that the police power of the states extends to the regulation of certain trades and callings, particularly those which closely concern the public health."). While Plaintiff disputes the seriousness of the COVID-19 pandemic, he cannot seriously dispute that agencies across the world and within the United States have declared that COVID-19 presents a public health emergency. Nor does Plaintiff dispute that C[OVID]-19 is highly contagious. (Doc. 36 at 5.) The CDC has issued guidance that COVID-19 is known to spread through close contact with infected persons and that not all infected persons are symptomatic. Thus, the precise aimless wandering Plaintiff claims EO 2020-33 prohibits is the exact type of activity that could cause the virus to spread. Accordingly, it cannot reasonably be said that EO 2020-33 was not issued in accordance with the emergency police power vested in Arizona's Governor by the Arizona Legislature. Moreover, the Supreme Court has affirmed "that summary governmental action taken in emergencies and designed to protect the public health, safety and general welfare does not violate due process." *Lumbreras v. Roberts*, 319 F. Supp. 2d

---

[5] Plaintiff, for the first time in his Reply, seems to raise an argument that EO 2020-33 is overbroad. However, because the argument was improperly raised, the Court need consider this argument in ruling on the motion. *See Delgadillo v. Woodford,* 527 F.3d 919, 930 n. 4 (9th Cir. 2008) ("Arguments raised for the first time in [the] reply brief are deemed waived.")

1191, 1206 (D. Or. 2004) (quoting *Sinaloa*, 882 F.2d at 1406). Consequently, Plaintiff is not likely able to succeed in establishing that he was deprived of his rights without due process, nor does the Court find Plaintiff raised serious questions on the matter. As a result, Plaintiff has not established a likelihood that he will succeed on the merits of this claim, nor has he raised serious questions on the matter.

### 4. EO 2020-33 does not violate Plaintiff's substantive due process rights.

"The Fourteenth Amendment's Due Process Clause protects individuals from state action that either shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Martinez v. City of Oxnard*, 337 F.3d 1091, 1092 (9th Cir. 2003) (internal citations omitted). Plaintiff again asserts that EO 2020-33 "is a manifest infringement upon a fundamental liberty guaranteed under the Constitution of the United States"—the right to free movement and travel. (Doc. 21-1 at 14.) However, Plaintiff's substantive due process claim fails for substantially the same reasons as his procedural due process claim.

Assuming Plaintiff can establish EO 2020-33 infringes on a fundamental right, the Supreme Court's *Jacobson* framework for evaluating state actions in the context of a public health emergency governs the substantive due process analysis. *See Abbott*, 954 F.3d at 777–78) (applying *Jacobson* framework to constitutional challenge to executive order by Texas Governor relating to COVID-19); *see also Martinko v. Whitmer*, No. 20-00062-MM, at 11 (Mich. Ct. Cl. Apr. 29, 2020) (applying *Jacobson* test to substantive due process claims against Michigan stay-at-home order). In *Jacobson*, the Supreme Court upheld a state law mandating smallpox vaccinations. *Jacobson v. Massachusetts*, 197 U.S. 11, 31 (1905). The Supreme Court explained that "the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint. . . This court has more than once recognized it as a fundamental principle that persons and property are subjected to all kinds of restraints and burdens in order to secure the general comfort, health, and prosperity of the state." *Id.* at 26. The Fifth Circuit, applying *Jacobson*,

summarized that "[t]he bottom line is this: when faced with a society-threatening epidemic, a state may implement emergency measures that curtail constitutional rights so long as the measures have at least some 'real or substantial relation' to the public health crisis and are not 'beyond all question, a plain, palpable invasion of rights secured by the fundamental law.'" *Abbott* 954 F.3d at 784 (quoting *Jacobson*, 197 U.S. at 31).

As discussed above, EO 2020-33 has at least some "real or substantial relation" to the public health crisis resulting from COVID-19; and just as Plaintiff cannot show EO 2020-33 is arbitrary, he cannot show it is beyond all question, a plain, palpable invasion of his fundamental rights. EO 2020-33 incorporates various exceptions to its directive that Arizonans limit their time away from home. Those exception include engaging in constitutionally protected activities, outdoor exercise, caring for family members or friends in other residences, attending work or volunteering in essential functions, visiting retailers, and other "essential activities." (Doc. 21-19 at 3-4.) To the extent Plaintiff wishes to move outside his home, EO 2020-33 does not preclude him from doing so. It merely demands he do so "at least six feet from any other person" "*to the extent possible*." (Doc. 21-19 at 4) (emphasis added). Consequently, even to the extent Plaintiff disputes the *Jacobson* framework applies, he has not and is unlikely to show that EO 2020-33 "shocks the conscience." *Lumbreras*, 319 F. Supp. 2d at 1212 (explaining that to show a measure is "conscience shocking" a plaintiff must show, at the very least, that "the government's action was 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.'") (quoting *Sinaloa Lake*, 882 F.2d at 1407).

In light of the circumstances presented by COVID-19 and the fundamental principle that our individual rights must at times yield to the needs of society, Plaintiff has not demonstrated that he will likely succeed on this claim or raised serious questions as to its merits.

**5.** **An injunction against future executive orders is not appropriate.**

Lastly, in addition to the aforementioned disparities in Plaintiff's claims, Plaintiff's request for a preliminary injunction enjoining Governor Ducey from issuing any

subsequent Executive Orders imposing a "quarantine" is outside the scope of appropriate injunctive relief. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) ("Injunctive relief . . . must be tailored to remedy the specific harm alleged. An overbroad injunction is an abuse of discretion.") (quoting *Lamb-Weston Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991)); *see also Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir. 1987) ("Broad language in an injunction that essentially requires a party to obey the law in the future is not encouraged and may be struck from an order for injunctive relief . . . .").

## CONCLUSION

Because Plaintiff has failed to establish that he is likely to succeed on any of his claims, or even raise serious questions going to the merits of his claims, the Court need not consider the existence of an irreparable injury. *Germon v. Times Mirror Co.*, 520 F.2d 786, 788 (9th Cir. 1975). Plaintiff has failed to establish that he is entitled to a preliminary injunction enjoining the enforcement of EO 2020-33 or enjoining the issuance of any similar order in the future, and his Amended Motion is denied.

**IT IS HEREBY ORDERED** that Plaintiff Joseph McGhee's Amended Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 22) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Excess Pages for Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 23) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Excess Pages for Memorandum of Law in Support of Third Amended Complaint (Doc. 24) is **GRANTED.**

Dated this 8th day of May, 2020.

_____
G. Murray Snow
Chief United States District Judge