**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Martin McGhee, | No. CV-20-08081-PCT-GMS |
| Plaintiff, | |
| v. | **ORDER** |
| City of Flagstaff, et al., | |
| Defendants. | |

Pending before the Court are Defendant Governor Douglas Ducey ("Governor Ducey")'s Motion for Judicial Notice, (Doc. 27), and Plaintiff Joseph McGhee's Motion for Judicial Notice of Adjudicative Facts, (Doc. 35). For the following reasons, both Motions are granted in part and denied in part.

**I.  Legal Standard**

Federal Rule of Evidence 201(b) provides that a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Rule 201(c)(2) further provides that the Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." "The court may take judicial notice at any stage of the proceeding." Fed. R. Evid. 201(d).

## II. Defendant Governor Ducey's Motion for Judicial Notice

Governor Ducey requests the Court take judicial notice of certain facts and publicly available documents that are relevant to Plaintiff's constitutional and statutory challenges to two specific executive orders concerning the 2020 novel Coronavirus ("COVID-19") pandemic. The facts and records presented for judicial notice fall into four categories: (1) statistics from the federal Centers for Disease Control and Prevention ("CDC") and Arizona Department of Health Services ("ADHS") on the reported number of cases and deaths from COVID-19 and, for comparison purposes, CDC statistics on the number of deaths from the (H1N1)pdm09 virus ("H1N1") and from the United States National Archives and Records Administration ("National Archives") on the number of American deaths in the Vietnam War; (2) public statements regarding COVID-19 from the United Nations World Health Organization ("WHO"), President Donald Trump, and the United States Department of Health and Human Services ("HHS"); (3) public statements regarding COVID-19 from Governor Ducey; and (4) United States Census Bureau Data concerning Arizona's population.

### 1. Publicly Reported Statistics on COVID-19 and Comparison Figures.

Governor Ducey explains that courts routinely take judicial notice of statistics compiled and released by governmental agencies. *See, e.g., United States v. Orozco-Acosta*, 607 F.3d 1156, 1164 n.5 (9th Cir. 2010) (taking judicial notice of statistics compiled by the U.S. Department of Homeland Security and U.S. Department of Justice); *see also Changjiang Cruise Overseas Travel Co.,* 630 F. Supp. 2d 255, 263 n.3 (E.D.N.Y. 2008) ("The Court can take judicial notice of government statistics."). However, it is not appropriate to take judicial notice of facts subject to reasonable dispute. Fed. R. Evid. 201(b); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001) (finding the district court erred by taking judicial notice of disputed matters to support its ruling).

Plaintiff's Third Amended Complaint (TAC) in large part disputes the accuracy and methodology of the government statistics reporting COVID-19 cases and related deaths.

Moreover, the COVID-19 pandemic is still unfolding and the testing capabilities to assess how infectious and lethal the virus is are constantly changing. Any statistics at this juncture are not only disputed in this action but are inherently unreliable and the Court declines to take judicial notice of them

However, the Court finds no error in taking judicial notice of the fact that publications containing the purported statistics exist. *See Lee*, 250 F.3d at 689–90 (reasoning that the court could take judicial notice that certain documents existed and that they purport certain facts, but could not take judicial notice of disputed facts within those documents "for the truth of the facts recited therein") (internal citations and quotations omitted).

The Court, therefore, takes judicial notice that the following publications exist, but declines to take notice of the true of the facts they assert:

1. As of May 4, 2020, the CDC reports 1,152,372 COVID-19 cases and 67,456 deaths in the United States. *See* Cases of Coronavirus Disease (COVID-19) in the U.S., Centers for Disease Control and Prevention (May 4, 2020), https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html).

2. As of May 4, 2020, ADHS reports 8,919 COVID-19 cases and 362 deaths in Arizona. Data Dashboard, Arizona Department of Health Services (May 4, 2020), https://azdhs.gov/preparedness/epidemiology-disease-control/infectious-diseaseepidemiology/ covid-19/dashboards/index.php

3. By comparison, from April 12, 2009 to April 10, 2010, CDC estimated there were 60.8 million cases and 12,469 deaths in the United States due to the H1N1 virus. 2009 H1N1 Pandemic (H1N1pdm09 virus), Centers for Disease Control and Prevention (June 11, 2019), https://www.cdc.gov/flu/pandemic-resources/2009-h1n1-pandemic.html.

4. As another point of comparison, the National Archives reports that there were 58,220 U.S. military fatal casualties in the Vietnam War. *See* Vietnam War U.S. Military Fatal Casualty Statistics, National Archives (Aug. 15, 2016),

https://www.archives.gov/research/military/vietnam-war/casualty-statistics.

### 2. Public Statements Regarding COVID-19 from the WHO or Federal Government.

Governor Ducey asks the Court to take notice that the WHO declared a public emergency related to the COVID-19 outbreak and classified the outbreak as a pandemic. Governor Ducey also presents publications from HHS declaring a public health emergency and President Trump declaring a national emergency both relating to COVID-19. Also presented for judicial notice are CDC and President Trump's published guidance concerning how to combat and slow the spread of COVID-19 and CDC statements on the manner and speed at which the virus is spreading. All the proposed statements are available on government websites.

Because government publications are matters of public record and can be easily verified, they are proper subjects of judicial notice. *See Corrie v. Caterpillar, Inc.*, 503 F.3d 974, 978 n.2 (9th Cir. 2007) (explaining that a court may take judicial notice of a government publication); *see also Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) (taking judicial notice of public records that "can be accessed at Santa Monica's official website"); *Gent v. CUNA Mut. Ins. Soc'y*, 611 F.3d 79, 84 n.5 (1st Cir. 2010) (taking judicial notice of information concerning the transmission of Lyme Disease from the CDC website). Moreover, the proposed publications are relevant, not for the truth of what they assert, but for their existence. To avoid taking judicial notice of disputable facts within matters of public records, the Court limits its judicial notice of the proposed publications to their existence and that they contain the purported statements. *See Lee*, 250 F.3d at 689–90.

The Court takes judicial notice that the following publications exist and purport the asserted facts:

1. On January 30, 2020, the WHO declared a public health emergency of international concern related to the COVID-19 outbreak. *See* WHO Director-General's Statement on IHR Emergency Committee on Novel Coronavirus

(2019-nCoV), World Health Organization (Jan. 30, 2020), https://www.who.int/dg/speeches/detail/who-director-general-s-statement-on-ihr-emergency-committee-on-novel-coronavirus-(2019-ncov).

2. On January 31, 2020, HHS declared a Public Health Emergency related to the COVID-19 outbreak. *See* Secretary Azar Declares Public Health Emergency for United States for 2019 Novel Coronavirus, U.S. Department of Health and Human Services (Jan. 31, 2020), https://www.hhs.gov/about/news/2020/01/31/secretary-azar-declares-public-health-emergency-us-2019-novel-coronavirus.html; Determination that a Public Health Emergency Exists, U.S. Department of Health and Human Services (Jan. 31, 2020), https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx.

3. On March 11, 2020, the WHO declared the COVID-19 outbreak a pandemic. *See* WHO Director-General's Opening Remarks at the Media Briefing on COVID-19—11 March 2020, World Health Organization (Mar. 11, 2020), https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020 ("We have therefore made the assessment that COVID-19 can be characterized as a pandemic.").

4. On March 13, 2020, President Trump declared a national emergency due to the health implications of the COVID-19 virus. *See* Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, The White House (Mar. 13, 2020), https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/.

5. On March 15, 2020, CDC issued guidance recommending the cancellation of community-wide gatherings larger than 250 individuals. *See* Get Your Mass

Gatherings or Large Community Events Ready: Interim Guidance for Coronavirus Disease 2019 (COVID-19), Centers for Disease Control and Prevention (Mar. 15, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/large-events/mass-gatherings-ready-for-covid-19.html). The guidance also suggested that "gatherings of more than 10 people for organizations that serve higher-risk populations" should be cancelled. *Id*.

6. On March 16, 2020, CDC and President Trump issued updated guidance recommending that individuals avoid social gatherings of more than 10 people and use drive-thru, pickup, or delivery options at restaurants and bars to slow the spread of COVID-19. *See* The President's Coronavirus Guidelines for America: 30 Days to Slow the Spread, The White House (Mar. 16, 2020), https://www.whitehouse.gov/briefings-statements/coronavirus-guidelines-america/; https://www.whitehouse.gov/wp-content/uploads/2020/03/03.16.20_coronavirus-guidance_8.5x11_315PM.pdf.

7. The CDC has stated that "[t]he virus that causes COVID-19 is spreading very easily and sustainably between people. Information from the ongoing COVID-19 pandemic suggest that this virus is spreading more efficiently than influenza, but not as efficiently as measles, which is highly contagious." Coronavirus Disease 2019 (COVID-19): How COVID-19 Spreads, Centers for Disease Control and Prevention (Apr. 13, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html.

8. According to the CDC, "[m]aintaining good social distance (about 6 feet) is very important in preventing the spread of COVID-19." *Id.*

9. On April 15, 2020, the CDC published a factsheet on COVID-19 that states that "COVID-19 is primarily spread from person to person," and a person "can become infected by coming into close contact (about 6 feet or two arm lengths) with a person who has COVID-19." What You Should Know About COVID-

19 to Protect Yourself and Others, Centers for Disease Control and Prevention (Apr. 15, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/2019-ncov-factsheet.pdf.

10. According to the CDC factsheet, "COVID-19 symptoms can range from mild (or no symptoms) to severe illness." *Id*.

11. According to the CDC factsheet, "[e]veryone is at risk of getting COVID-19." *Id*.

12. The CDC's factsheet provides the following recommendation for individuals to protect themselves and others: "Get deliveries and takeout, and limit in-person contact as much as possible." *Id*.

13. On April 16, 2020, CDC and President Trump issued updated guidance designed for "opening up America again." Guidelines: Opening Up America Again, The White House, https://www.whitehouse.gov/wp-content/uploads/2020/04/Guidelines-for-Opening-Up-America-Again.pdf (last visited May 4, 2020).

14. According to the April 16, 2020, guidance, States must satisfy gating criteria before proceeding to phasing opening including that (a) there must be a "[d]ownward trajectory of influenza-like illnesses (ILI) reported within a 14-day period AND [d]ownward trajectory of COVID-like syndromic cases reported within a 14-day period"; (b) there must be a "[d]ownward trajectory of documented cases within a 14-day period OR [d]ownward trajectory of positive tests as a percent of total tests within a 14-day period (flat or increasing volume of tests)"; and (c) hospitals must be able to "[t]reat all patients without crisis care AND [r]obust testing program in place for at-risk healthcare workers, including emerging antibody testing." *Id.*

15. The April 16 guidance states that once the gating criteria is met, States may implement a phased approach "at Governors' discretion." *Id.*

16. The CDC has also reported that "PPE shortages" and shortages of other

medical equipment—including facemasks and ventilators—"are currently posing a tremendous challenge to the US healthcare system because of the COVID-19 pandemic." Strategies to Optimize the Supply of PPE and Equipment, Centers for Disease Control and Prevention (Apr. 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/hcp/ppe-strategy/index.html.

### 3. Public Statements Regarding COVID-19 from Governor Ducey.

Governor Ducey also asks the Court to take judicial notice of various executive orders he has issued in response to the COVID-19 pandemic, their contents, and the contents of a slide deck from a public briefing titled "Arizona Together." The Arizona Together presentation includes statistics about Arizona's hospital capacity, the current state of the Executive Orders, and Governor Ducey's plan for "returning stronger."

As established above, government publications are the proper subject for judicial notice and the contents of Governor Ducey's executive orders are not subject to reasonable dispute. Moreover, they are also attached to the TAC. Thus, the Court will take judicial notice of the proposed executive orders and the selected portions of their contents. However, because the "Arizona Together" presentation largely concerns Governor Ducey's plan for future actions and disputed statistics, it lacks the indicia of reliability necessary for judicial notice of its truth. Thus, the Court will take judicial notice that the presentation exists and that it purports certain facts. *Id.*

The Court takes judicial notice that:

1. On March 20, 2020, Governor Ducey issued EO 2020-11 expanding access to unemployment benefits for those affected by COVID-19 by waiving the waiting period and active job search requirements. *See* Executive Order 2020-11: Ensuring Individuals Whose Employment Is Affected by COVID-19 Have Access to Unemployment Insurance, Office of the Governor Doug Ducey (Mar. 20, 2020), https://azgovernor.gov/sites/default/files/eo_2020-11_sw.pdf. Specifically, EO 2020-11 expands access to "a. Individual[s] whose employer has permanently or temporarily ceased or drastically reduced operations due to

COVID-19 resulting in a reduction of wages . . . ; b. individuals who, due to requirements that the individual be quarantined, are not able to work and do not have any available paid leave even if the individual has an expectation of returning to work after the quarantine is over; c. Individuals that leave employment due to a risk of exposure or infection or to care for a family member who has been infected with COVID-19; or d. Individuals that for any other scenario are separated from work for reasons related to COVID-19" so long as it is consistent with federal and guidance." *Id*.

2. On March 23, 2020, Governor Ducey issued EO 2020-12, prohibiting the closure of essential businesses. *See* Executive Order 2020-12: Prohibiting the Closure of Essential Businesses, Office of the Governor Doug Ducey (Mar. 23, 2020), https://azgovernor.gov/sites/default/files/eo_2021_0.pdf.

3. EO 2020-12 defines in detail what constitutes an essential activity including healthcare and public health operations, human services operations, essential infrastructure operations, essential government functions, and essential businesses and operations. *Id.* Essential businesses and operations is further defined to include stores that sell groceries and medicine; food beverage and agriculture; outdoor recreation activities; organizations that provide charitable and social services; media; gas stations and businesses need for transportation; financial institutions; hardware and supply stores; critical trades; mail, post, shipping, logistics, delivery and pick-up services; educational institutions; laundry services; restaurants for consumption off-premises; supplies to work from home; supplies for essential businesses and operations; transportation; home-based care and services; residential facilities and shelters; professional and personal services; day care centers for employees exempted by EO 2020-12; manufacture distribution, and supply chain for critical products and industries; hotels and motels; and funeral services. *Id*.

4. On May 4, 2020, Governor Ducey issued EO 2020-34. *See* Executive Order

2020-34: Building on COVID-19 Successes, Office of the Governor Doug Ducey (May 4, 2020), https://azgovernor.gov/sites/default/files/eo_2020-34_salons_dine_in.pdf.

5. EO 2020-34 modifies EO 2020-09 by stating "dine-in services" at restaurants "may resume" starting on May 11, 2020, "provided they establish and implement protocols and best practices for businesses to address COVID-19, including enacting physical distancing policies, limiting the number of diners and following protocols as directed by the [federal government and ADHS]." *Id.*

6. Governor Ducey issued updated guidance for Arizonans and businesses, including a slide deck from a public briefing titled "Arizona Together." Updated Guidance for Arizonans, Businesses, Office of the Governor Doug Ducey (April 29, 2020), https://azgovernor.gov/governor/news/2020/04/updated-guidance-arizonans-businesses; Arizona Together, Office of the Governor Doug Ducey, https://azgovernor.gov/sites/default/files/related-docs/covid42720-pos.pdf (last visited May 4, 2020).

The following statements are noticed as being contained in the "Arizona Together" presentation, but are not noticed for the truth of the matter asserted:

1. The Arizona Together presentations states there were 7,202 positive cases of COVID-19 from 68,813 tests, throughout fifteen counties in Arizona, resulting in 304 deaths through April 28, 2020. Arizona Together, Office of the Governor Doug Ducey, https://azgovernor.gov/sites/default/files/related-docs/covid42720-pos.pdf (last visited May 4, 2020).

2. The Arizona Together presentation states that over the span of eighteen days (April 11 through April 28), between 7 and 10% of hospital inpatient beds in Arizona were occupied by COVID-19 patients, with four of the last five days reporting 10% capacity. *Id.*

3. The Arizona Together presentation states that over the span of nineteen days (April 10 through April 28), between 13 and 20% of intensive care unit hospital

beds were occupied by COVID-19 patients, with seventeen of those days reporting 17% capacity or higher. *Id.*

4. The Arizona Together presentation also states that over the span of nineteen days (April 10 through April 28), between 10 and 15% of the ventilators available were being used by COVID-19 patients. *Id*.

5. The Arizona Together presentation describes a planned "Arizona testing blitz," which is a "[p]artnership with community labs to rapidly increase diagnostic testing availability at drive through sites" where "anyone who thinks they are infected or recently exposed to COVID-19 can be tested." *Id.* In addition, antibody testing will be made available in early May to provide testing "without needing a provider's order or insurance in Arizona." *Id.*

6. The Arizona Together presentation states that Governor Ducey's plan for "returning stronger" includes "increas[ing] testing to return in May while maintaining strong physical distancing" by "phas[ing] in return based on the recommendations by the CDC and health experts through May and June." *Id.*

7. According to the Arizona Together presentation, several businesses and services are currently "open" under Governor Ducey's Executive Orders relating to COVID-19, including health and public health operations, construction, manufacturing, delivery and take out dining, grocery stores, pharmacies, essential retail, gas stations, hardware stores, hotels and motels, car dealers, auto mechanics, state parks, golf courses, charitable and social services, Goodwill, media, banks, credit unions, critical trades, postal services, laundry services, and elective surgeries. *Id*.

8. The Arizona Together presentation states that other businesses and services remain temporarily "closed" under Governor Ducey's Executive Orders, including schools, universities, restaurants, bars, gyms, movie theaters, barber shops, salons, spas, concerts, spring training, large venues, college sports, Major League Baseball, casinos, NBA, weddings, bowling alleys, large outdoor events,

small businesses, most retail, and limited daycares. *Id.*

9. The Arizona Together presentation outlined Governor Ducey's plan for (a) "partial reopening of retail" as applied to small businesses starting on May 4, 2020 through May 8, 2020; (b) reopening dine-in restaurants based on information from the restaurant industry and CDC guidance; and (c) executing the Executive Order authorizing elective surgeries if the healthcare organization "can demonstrate adequate capacity." *Id.*

### 4. Census Data on Arizona Population.

The Ninth Circuit has explicitly held that Census Bureau statistics "meet the requirements of Rule 201(b)." *United States v. Esquivel*, 88 F.3d 722, 726-27 (9th Cir. 1996); *see also Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 332 n.10 (1961) (citing Census Bureau statistics). The census data is relevant to assessing Plaintiff's claim that the COVID-19 pandemic does not pose "extreme peril" to Arizonans and the constitutionality of Governor Ducey's response to the pandemic. The Court finds no basis to deny judicial notice of proposed data.

The Court takes judicial notice that:

1. The Census Bureau estimates that as of July 1, 2019, Arizona has a total population of 7,278,717. *See* QuickFacts: Arizona, United States Census Bureau, https://www.census.gov/quickfacts/fact/table/AZ/AGE775218#AGE775218 (last visited May 4, 2020).
2. The Census Bureau reports that 17.5% of Arizona's population is aged 65 or over. *Id.*

### III. Plaintiff's Motion for Judicial Notice

Plaintiff's TAC asserts various facts derived from assorted studies that dispute the infectiousness and fatality of COVID-19 as reported by the WHO and CDC. To support his claims that COVID-19 does not present the type of emergent circumstances necessary to justify the executive orders and proclamations challenged in this action, Plaintiff asks

the Court to take judicial notice of seven studies concerning COVID-19's infection and mortality rate, data concerning the mortality rates of H1N1, the Plague, and Small Pox, and statements from the Council of State and Territorial Epidemiologists ("CSTE")'s position statement regarding what constitutes a confirmed COVID-19 diagnosis.

As established above, purported facts regarding the severity of COVID-19 are not proper subjects for judicial notice in this matter not only because they are in dispute, but because they simply cannot be definitively determined while the pandemic is currently unfolding. Thus, while the Court will take judicial notice that the studies submitted by Plaintiff for judicial notice exist, the Court declines to give any credence to the underlying facts contained therein.

**IT IS HEREBY ORDERED** that Defendant Governor Douglas Ducey's Motion for Judicial Notice (Doc. 27) is **GRANTED** in part and **DENIED** in part.

**IT IS FURHTER ORDERED** that Plaintiff Joseph McGhee's Motion for Judicial Notice of Adjudicative Facts (Doc. 35) is **GRANTED** in part and **DENIED** in part.

Dated this 8th day of May, 2020.

_____
G. Murray Snow
Chief United States District Judge